## WESTERN UNION TELEGRAPH COMPANY v. DAVIS JOHNSEY.

### Decided March 7, 1908.

**1.—Continuance—Discretion of Court.**

The action of a trial court in overruling an application for continuance which does not comply with the requirements of the statute, but is addressed to the discretion of the court, will not be revised unless an abuse of such discretion is shown. An application for continuance based on the absence of witnesses considered, and held insufficient in the matter of diligence.

**2.—Negligence—Damages—Duty to Lessen or Prevent.**

One who is threatened with damage by reason of the negligent conduct of another should exercise reasonable prudence to avoid or lessen the consequences of such neglect, provided it can be done at a reasonable expense. In a suit against a telegraph company for its failure to promptly deliver a death message, evidence considered, and held to raise the issue whether or not plaintiff exercised due diligence to lessen the injuries, and hence to require a submission of the issue to the jury.

**3.—Telegraph Company—Office Hours.**

Where a telegraph company, in the matter of important messages, customarily disregards its own rule as to hours for the delivery of messages to the public, the failure of the court to charge the jury, in a suit for damages for failure to deliver an important message, upon defendant's rule as to office hours, was harmless. And where such a message was in fact delivered after the alleged office hours the issue as to the reasonableness of the office hours became immaterial.

**4.—Same—Death Message—Negligence—Failure to Embalm Body.**

In a suit against a telegraph company for damages resulting from its failure to promptly deliver a death message, the failure of the plaintiff to request

those in charge of the body to embalm, and so preserve it until he could arrive, is no defense.

**5.—Practice—Exclusion of Improper Testimony.**

A mere objection to improper testimony after it has gone to the jury, without a request that the jury be instructed not to consider the same after the objection is sustained or admitted by opposite counsel to be good, is not available on appeal.

**6.—Appeal—Practice.**

Only such objections as were made to testimony at the time it was admitted can be considered on appeal.

Appeal from the District Court of Hunt County. Tried below before Hon. R. L. Porter.

*N. L. Lindsley* and *Geo. H. Fearons,* for appellant.

*Looney & Clark,* for appellee.

BOOKHOUT, ASSOCIATE JUSTICE.—Appellee, Davis Johnsey, sued appellant, Western Union Telegraph Company, for an alleged delay in transmission and delivery of two messages sent to himself from Greenville, Texas, on June 23, 1906, in the care of W. C. Rea, at Roff, Indian Territory. The two messages in the order filed, are:

"Greenville, Texas, 6-23-1906.

To Davis Johnsey,
    Care W. C. Rea, Roff, I. T.
    Your mother very low. Come at once.
                            (Signed)        L. H. Johnsey."

"Greenville, Texas, 6-23-1906.

To Davis Johnsey,
    Care W. C. Rea, Roff, I. T.
    Mother died at 12:20 p. m.
                    . (Signed)        V. Johnsey."

It is claimed that the first message was filed with the company for transmission at about noon and that the second message was filed with the company for transmission about 3 p. m. on June 23, 1906; that the object and purpose of sending the said messages was that appellee might be advised of his mother's condition, so that he might attend her bedside prior to her death, and in the event of her death view her remains and attend her funeral; that had either message been delivered with reasonable diligence and promptness, appellee would have received them in the afternoon of June 23, in time to have taken a train for Greenville which passed the town of Roff about 8 o'clock p. m. It is claimed appellee would have taken said train, and that he would have arrived at Greenville on the morning of June 24, and in time to have viewed his mother's remains, and to have attended her funeral. Appellee, as a matter of fact, left Roff, Indian Territory, on the morning of June 24, and arrived at Greenville, Texas, about 3 o'clock in the afternoon

of said day, and was present at his mother's funeral, but it is claimed that his mother's remains had so decomposed during the day that he was unable to view them when he did arrive; that if he had left Roff, Indian Territory, the night before he would have arrived at Greenville on the morning of the 24th, and at a time when he could have viewed his mother's remains while they were in a state of preservation. Appellee asked judgment for the damages alleged in the sum of $2000.

Appellant answered by (1) a general demurrer; (2) a general denial; (3) specially, that both the messages sued on were accepted and sent with the express understanding that the company would not be liable for mistakes or delays in the transmission or delivery of the messages caused by unavoidable interruption in the working of its lines; that at the time it received each of the messages mentioned in the petition, appellant's agent at Greenville who received and accepted the messages for transmission did not know of any wire trouble on the company's lines over which these messages had to go; that the messages were promptly transmitted from Greenville to Dallas, and promptly transmitted from Dallas to Denison, en route to Roff, Indian Territory; that the two messages were received by the Denison office within a reasonable time after the receipt of the same for transmission at Greenville, and were held in the Denison, Texas, office until about the hour of 7 p. m. on said day; that the holding of the said messages in the Denison office until said hour was unavoidable, and caused by circumstances over which the company had no control; that it had no other way of sending these messages to Roff, except via Denison; that its wires were crossed between Denison and Roff at or around Kingston and Woodville, Indian Territory, and that one cause of the wire trouble was, that a tree had fallen across the line about two miles east of Weleeta Junction, Indian Territory; that there was also electrical storms prevailing causing said trouble; that it did everything in its power to locate the trouble as soon as possible, and did locate the trouble, and repaired the same as soon as it was possible to do so; that appellant finally succeeded in transmitting the messages to Roff at about 7 p. m. on the day they were received, and that in fact the said messages were sent as soon as they could be sent, and that they were delivered to appellee within a few minutes after 7 o'clock p. m. on June 23, 1906, and some forty minutes or more prior to the time the southbound train, on which it is alleged that appellee would have come, did leave Roff, Indian Territory; (4) further specially answering, appellant pleaded that the two messages sued on were received at Roff, Indian Territory, about 7 o'clock p. m., on June 23, 1906, and in ample time for the appellee after said messages were delivered to him (7:25 p. m.), by the exercise of ordinary care and reasonable diligence, to have taken the southbound train due to leave Roff at 7:54 p. m. on said day, which was the first train that appellee could have taken for Greenville after the messages were filed in Greenville, and that his failure to take said train was caused by his own acts, and not by reason of any negligence of the company; (5) that in any event the proximate cause of his failure to view his mother's remains while they were in a state of preservation was the failure of those having the remains in charge to have the same embalmed; (6) further, that it

had long maintained at Roff, Indian Territory, reasonable office hours, which were from 7 a. m. to 7. p. m. daily during the week days, and from 8 a. m. to 10 a. m. and from 4 p. m. to 6 p. m. on Sundays; that the said messages were received at Roff, Indian Territory, after 7 o'clock p. m. on Saturday, and after its messenger boy had gone home for the day, and that while the said messages were telephoned to W. C. Rea and the contents of the same delivered to appellee, yet appellant was not obligated to so deliver the said messages outside of its said office hours.

Appellee filed his first supplemental petition, and excepted to appellant's special answer, (1) because the same fails to show that the delay was caused by facts that could not have been avoided by reasonable diligence; (2) because the fact that the body was not embalmed was immaterial, there being no law requiring such action in order to excuse the consequence of negligence; (3) because said answer shows on its face that the office hours pleaded are not in fact reasonable, and (4) appellee pleaded *non est factum* as to the special contract limiting appellant's liability in so far as it relates to the second message. These exceptions were all overruled and appellee excepted.

A trial resulted in a verdict and judgment for plaintiff in the sum of $1000, and defendant appealed.

*Opinion.*—The first assignment of error complains of the overruling of defendant's application for continuance. The suit was filed September 7, 1906. The application was made March 29, 1907, and was made for the testimony of F. Montgomery, J. D. Jones, Charles Kirk and John Kirk. It alleged that they are "some of the parties" who had charge of the work of repairing the defendant's line at the time in question. It shows that they all resided outside of the State of Texas; that defendant did not know of their present whereabouts, although it had made diligent effort to ascertain the fact by wiring and writing and having personal inquiries made; it charges and believes that none of the witnesses are now in its employ, though John Kirk, it says, was in its employ at the last term of court and it had him; it believes that the witnesses can be found, and says if the application is granted defendant will make diligent effort to obtain their depositions which it believes it can and will be able to do. This was the second term of court after the suit was filed. No reason is assigned why no effort had been made to take depositions up to that time. Defendant's agent at Roff testified on the trial that he did not know where the Kirk boys were at that time; that about a week before he had been asked to locate them but had been unable to definitely locate them; that John left Roff about two weeks ago and that Charles, the one who took the messages, quit the company in September about the time suit was brought; that Jones is the company's lineman whose headquarters are at Francis, Indian Territory. Montgomery is not accounted for.

The application for continuance failed to show diligence on the part of defendant to procure the testimony of the witnesses named, and the application was properly overruled. St. Louis & S. F. Ry. v. Skaggs, 32 Texas Civ. App., 363. The application did not comply with the requirements of the statute, and was addressed to the sound discretion

of the court, and his discretion will not be revised, unless it has been abused.   It is not shown in this case that the court abused its discretion in overruling the application.

Error is assigned to the action of the court in failing to give at the request of the defendant a special charge instructing a verdict in its favor.   It is insisted that, notwithstanding the negligent acts of appellant, the injury sustained by plaintiff might have been avoided by the exercise of reasonable diligence and ordinary care on his part and the failure to exercise such diligence and care will prevent a recovery.

The appellant's agent, Smith, telephoned the messages about 7:25 p. m. to W. C. Rea, and told him that appellee could not make the train and Rea so informed appellee.   Smith was at the time the agent of appellant and also the agent of the railroad.

Oscar Davis' wife, Mrs. W. C. Rea, Etta Johnsey and appellee were all children of deceased and at Roff at the time of her death.   Oscar Davis and their two children were also there.   Appellee was working in Rea's drug store and had gone to supper when the messages were phoned to Rea.   Rea started to his home to inform the parties named of the contents of the messages and met appellee, and directed him to go to the store while he went to the house to tell the others.   Appellee did not go immediately to the depot because he was in his shirt sleeves. He phoned for a cab to go by the house to get his clothes, go to the depot and if possible catch the train.   He was informed by the livery stable men that the cab had already gone to the depot and that he could not make the train.   He did not make any further effort to get off on account of the information he received.   He did not go to the depot until after the train had gone.   That night about 9 o'clock he did go to the depot on other business but long after the train had gone. Rea hurried home and they all hurried as fast as they could and drove rapidly toward the depot but before they arrived there saw the train about a mile past the station.   They failed to catch the train.

The rule is, that one who is threatened with damage by reason of the negligent conduct of another should exercise reasonable prudence to avoid the consequences of such neglect.   He is bound to use ordinary care to render the injury as light as possible, provided it can be done at a reasonable expense.   Western U. Tel. Co. v. Jeanes, 88 Texas, 230.   The evidence was sufficient to raise the issue whether the appellee after receiving the messages used reasonable diligence to catch the first train out of Roff for Greenville, Texas.   If the evidence tended to show a reasonable excuse for his failure to take the first train, it was the court's duty to submit the issue to the jury.   The court properly left the issue to the determination of the jury.   Western U. Tel. Co. v. Bryson, 25 Texas Civ. App., 74.

It is assigned as error that the court erred in refusing to instruct the jury as requested by the defendant in its special charges Nos. 4, 5 and 8, relating to the defendant's office hours at Roff, Indian Territory.   We fail to see wherein the issue in reference to office hours became material in the case.   The messages were telephoned to W. C. Rea, and the appellee had notice of their contents.   Conceding that appellant had established office hours at Roff within which it only transacted business for the public, the evidence showed that the rule

had been customarily and habitually disregarded "as to important messages." Again, the evidence failed to show the exact time the appellant received the messages at Roff. The time endorsed on each of the messages was 7 o'clock p. m. Appellant's agent, Smith, testified they were received about 7 o'clock; that it would take the operator about a minute to transcribe each message. He further testified: "I can not explain how the operator received both of these messages at identically the same time. The identical time of receiving ought to go on there and the next message one minute later ought to show one minute later. It might be true that the reasonable explanation is that he put the time on when he got them both transcribed." However, the court in his main charge submitted the issue of reasonable office hours and there was no error in refusing special charges on the same issue. Western U. Tel. Co. v. Luck, 40 S. W., 754; Western U. Tel. Co. v. Boots, 31 S. W., 825; Western U. Tel. Co. v. Bryson, 25 Texas Civ. App., 74.

Error is assigned to the court's action in refusing appellant's special charge No. 6 in substance, as follows: "On the issue as to whether or not the defendant was negligent in failing to deliver the messages sooner than it did after they were received at Roff, Indian Territory, you will find for the defendant." Appellant contends that the uncontradicted evidence shows that the messages sued on were received at Roff, Indian Territory, after the hour of 7 p. m., and after the Roff office had closed for the day, and that the messages were delivered within a reasonable time after their receipt at Roff, and the court should have told the jury to find for the defendant on the issue as to whether or not the defendant was negligent in failing to deliver the messages sooner than it did after they were received at Roff. The messages showed on their faces that they were received at 7 o'clock, both at identically the same instant. The agent who received the messages sometimes went on duty before that time, and it seems to be conceded that the reasonable explanation is that they were both fully written before the time was written thereon. This witness testified that the messenger boy had gone home, but he states that he does not know what time he went. He also testified that the office hours were not over until seven o'clock had passed; that if the boy had gone when a message was received at exactly 7 o'clock it would not be delivered except by phone; that it was the duty of the boy to remain there until office hours closed; that he lived in the eastern part of the town and that in going home he would pass the store of W. C. Rea. The messages were not even phoned until twenty-five minutes past seven. The man who received the messages quit the company in September about eight months before the suit was tried, and the messenger boy lived there in Roff at the time of the trial. There was no effort made to get these witnesses and no reason assigned why their testimony had not been taken. There was no error in refusing the charge.

Complaint is made of the court's action in refusing special charges Nos. 10 and 11, requested by appellant. Charge No. 10 is as follows: "If you believe from the evidence that the plaintiff failed to reply to the messages in question, announcing that he was on his way, and that

if he had sent an answering message the same would have reached its destination in due time, and that his mother's remains would have been embalmed after those having the remains in charge had ascertained such fact, and you believe that a reasonably prudent man would have sent said message, and you further believe that a reasonably prudent person having the remains in charge ought to have had the remains embalmed, so that they might be kept in a good state of preservation, and that there were at hand embalmers who could have been had at a reasonable cost and expense, and that an ordinarily prudent person having the remains in charge, and knowing of such fact would have had the remains embalmed, and that the parties having the remains in charge failed to do so, you will, in such event, return a verdict for the defendant." Charge No. 11 embraced the same proposition in different language, as No. 10.

When appellee failed to catch the train on the evening of the 23d he telephoned his father that he would come on the next train, meaning the train which reached Greenville on the afternoon of June 24. L. H. Johnsey, the father of appellee, had promised Mrs. Johnsey in her lifetime that he would not have her remains embalmed and would not have had them embalmed had he been requested to do so. There is no statute in this State requiring the embalming of the body of deceased in order to excuse the negligence of appellant. The rights of appellee could not be made to depend upon his father's failure to have his mother's remains embalmed. The issue was not in the case and the court properly refused the requested charges. Western Union Tel. Co. v. Cain, 40 S. W., 624; Western U. Tel. Co. v. Crawford, 75 S. W., 843.

The fifth and sixth assignments of error are grouped and complain of the refusal of the appellant's special charges Nos. 12 and 14. These charges present the proposition of the negligence of appellee in failing to catch the train for Greenville on the evening of June 23, after he received the messages. The court's charge fully submitted the issue, whether or not the appellee exercised reasonable diligence to leave Roff on the first train for Greenville, after he learned the contents of the messages, and for this reason these special charges were properly refused. These remarks also apply to the seventh and eighth assignments which complain of the court's action in refusing its special charges Nos. 13 and 15.

The tenth assignment assails as erroneous paragraphs two and four of the main charge. Paragraph two is as follows: "It is the duty of a telegraph company to use ordinary care to transmit and deliver to the person addressed all messages accepted by it for transmission over its wires, and in case it fails to exercise such care and diligence, in transmitting and delivering such a message, it is liable to the person for whose benefit the message is sent for all damages he may sustain by reason of such failure."

Paragraph four is as follows: "You are further instructed that after the plaintiff received the message that his mother was dead, it was the duty of the plaintiff to exercise ordinary care to leave Roff on the first train going towards Greenville, and the evidence shows that he received such information before such train arrived at or left the town of Roff,

Indian Territory, therefore, if you should find that an ordinarily prudent person, under the circumstances surrounding plaintiff at the time he received such information, could and would have gone to the depot at Roff in time to catch said train, and leave thereon, then you should find for the defendant." These paragraphs announce correct propositions of law and the tenth assignment is overruled.

The eleventh assignment complains of the sixth paragraph of the court's charge in submitting the issue of office hours as maintained by appellant at Roff. It is insisted that there was no evidence tending to show that appellant's office hours were not reasonable. Paragraph six is as follows: "You are further instructed that the defendant had a right to establish and maintain reasonable office hours for the transaction of its business at Roff, and if you should find that it had established office hours there from 7 a. m. to 7 p. m. each day except Sunday, and if you should further find that such office hours were reasonable, and that the messages in question were not received by the operator at Roff until after such office hours on the day they were received, then you are charged that defendant's agent there was not required to deliver the messages until after 7 o'clock next morning, and defendant would not be liable for any delay of its agent in making the delivery he made, but you are charged that if you find that the messages were received from the wires at Roff before the close of such office hours there, or if you should find under the evidence before you that such office hours were not reasonable, then you are instructed that it was the duty of the defendant to exercise ordinary care to make a delivery of such messages when they were received by its operator at Roff." As already stated, we do not think the issue of office hours was in the case. The messages were phoned to W. C. Rea and he informed appellee of their contents. There was sufficient evidence to justify a finding that the messages were received at Roff before seven o'clock and as to important or death messages, the rule fixing office hours was habitually and customarily disregarded. Again, the evidence failed to show any excuse for the delay in transmitting the messages from Denison to Roff. The second message was not sent with the understanding that the company would not be liable for delays in its transmission, caused by unavoidable interruptions in the working of its lines. There was no such clause in the message.

The thirteenth assignment complains that the court erred in permitting plaintiff's counsel to ask C. D. Johnsey, appellee, over the objection of the defendant, the following question: "Q. Do you know whether any other relatives who were there made an effort to get the train?" And to permit him to answer: "A. Yes, sir; They tried to make the train." The only answer called for by the question was whether other relatives made any effort to get to the train. Upon objection being made to the answer the plaintiff's counsel stated, "All right, strike out the answer." This is all that occurred. The counsel for plaintiff having requested that the answer be stricken out we do not think this assignment presents reversible error, although appellant's counsel did not join in the request, and although the answer was not in fact stricken out. No charge was asked in reference to this testimony.

It is contended that the court erred in permitting plaintiff's counsel to ask Davis Johnsey, the plaintiff, over the objection of the defendant, certain questions which elicited from the said Johnsey the following testimony: "That after he received information as to the contents of the telegram containing the news of his mother's death, being at that time somewhere near train time, that he telephoned to the stable in Roff for a cab in which to go to his home and get his clothes and go to the train, and was informed from the said stable that the cab had already gone to the train, and that he could not make the train." And erred in refusing to strike from the consideration of the jury said testimony, in that the same was hearsay. This contention is not sustained. The evidence was admissible to show the diligence used by appellee to catch the train. The issue to be determined was, Did appellee exercise ordinary diligence to catch the train after ascertaining the contents of the messages?

It is assigned that the court erred in permitting plaintiff's counsel to ask L. H. Johnsey, over the objection of the defendant, the following question: "Q. Did you observe what effect, if any, it had on the plaintiff?" (Meaning the failure of the plaintiff to see his mother's remains while they were in a state of preservation), and in permitting the witness to answer: "A. Well, they all seemed to be terribly distressed." The defendant objected to the answer, whereupon the court remarked: "He didn't ask you what effect it had on them, and I told him the question was as to this party, the plaintiff." Plaintiff's counsel then remarked: "Yes, sir, that is what I wanted it confined to." The question did not call for the answer made by the witness. The court having rebuked the witness for making the answer, and appellee's counsel having expressly stated at the time that he wanted the answer confined to appellee alone and appellant having failed to move to strike out the answer as made, no reversible error is shown in this assignment.

Error is assigned to the court's action in permitting the plaintiff's witness, W. C. Rea, to testify over the objection of the defendant in response to questions propounded to him by plaintiff's counsel, as follows: "Q. All right, Mr. Rea, proceed with your story now, and tell the jury where you went, and how you went, from Davis Johnsey, where you met him?" A. "Well, I got in the buggy and went direct to the house and reported the news." Q. "Go right ahead, and tell the jury in your own way what you did?" A. "Well, of course I broke the news to the parties there." Q. "Well, just state what was done?" A. "Well, we hurriedly made preparations to catch the southbound train." Q. "What had to be done?" A. "Well, of course, there had to be some preparations for the ladies, not much." Q. "What was it?" A. "They possibly slipped on a shirt waist, or something, and we hurried to the depot, and the train was gone when we got there. We went in a surrey, and in a speedy trot. Oscar Davis went by the store to get Davis Johnsey."

The proposition presented is, that it was error for the court to permit testimony to go to the jury over appellant's objection on an issue not raised in plaintiff's petition concerning a matter of which appellant had no notice. No such objection was made at the time the testi-

mony was introduced. The objection in the bill of exception is that the evidence was incompetent and immaterial. We cannot pass upon the exceptions raised by the proposition. Only such exceptions as were made on the trial can be considered by us.

Finding no reversible error in the record the judgment is affirmed.

*Affirmed.*

Writ of error refused.