## MAUPIN et al. v. KING, County Judge.
### No. 3350.

Court of Civil Appeals of Texas. Amarillo.
Feb. 5, 1930.

Rehearing Denied March 5, 1930.

Fischer & Fischer, of Wichita Falls, and Reeder & Reeder, of Amarillo, for appellants. Hoover, Hoover & Cussen, of Canadian, Ta-tum & Strong, of Dalhart, and Jot Horton, of Spearman, for appellee.

RANDOLPH, J.

This suit was filed in the district court of Hansford county, Tex., by W. E. Maupin and three other resident citizens, voters and taxpayers of Hansford county, contesting an election held for the purpose of the removal of the county seat from Hansford, the then county seat. The locations as voted for in the election were Hansford, Gruver, and Spearman. At such election, it is alleged in contestants' petition that 1,278 votes were cast, of this number of votes Spearman received 876, 24 votes more than two-thirds of the total votes cast. This two-thirds majority was required by reason of the town of Spearman being situated more than five miles from the geographical center of the county.

The case was called for trial, and, after certain proceedings were had, which will be discussed hereafter, the trial court dismissed the case, and from this judgment of dismissal the contestants have appealed to this court.

The contestants' petition alleges that 107 votes of voters not qualified to vote were cast for Spearman. The grounds of disqualification alleged in the petition were: (1) That none of the named voters were bona fide residents of the county of Hansford for six months and of the state of Texas for one year prior to April 20, 1929, the date on which said election was held, and at which they voted; (2) that none of said above-named persons were bona fide residents of the county of Hansford on January 1, 1928; (3) that, although some of said above-named persons may have been bona fide residents of the state of Texas and of a county other than Hansford county on the 1st day of January, 1928, and bona fide residents of Hansford county for more than six months prior to April 20, 1929, yet none of such persons voted at said election upon tax receipts issued to them by the tax collectors of the respective counties in which they resided on January 1, 1928, but that all of them voted upon tax receipts issued to them by the tax collector of Hansford county during the month of January, 1929; (4) that the poll tax receipts issued to the above-named persons are illegally and unlawfully issued to them, in that said persons did not pay their poll taxes themselves and procure their receipts therefor, but said poll tax receipts held by the above-named persons were procured for them by others and in a manner not authorized by law.

The contestants' petition was filed in the district court on may 11, 1929. On the 2d day of August, 1929, contestants caused a subpoena to be issued out of said court for

certain witnesses (said witnesses being the named parties who are charged above as being illegal voters) to testify for them in said cause, and contestants also deposited the necessary costs for the subpœnaing of said witnesses. The said subpœna was delivered to the sheriff of said county, and the sheriff of that county made his return on same to said court on the 19th day of August, 1929; said day being the first day of the August term of said court. In his return, it is alleged that the sheriff's return showed the failure to serve the witnesses named in said subpœna because they could not be found in Hansford county.

The case being called for trial, the contestants, on the 20th day of August, 1929, filed their first motion for a continuance for the want of the testimony of the named witnesses. The contestee filed his reply to said motion for continuance, setting up controverting facts to those set up in the motion, and further that the contestants made the applications to have said witnesses subpœnaed only on the 2d day of August, 1929, and that, by the use of any sort of diligence, they could have and would have ascertained at said time that the witnesses above named and shown to be out of the county were out of the county at said time, and contestants could then have filed interrogatories, and could have had the depositions of all of said witnesses to be used at the trial of the cause when called for trial. The contestee therefore objected to a continuance of the cause for the reason stated, and for the further reason that the application fails to show that the contestants could prove by said witnesses that they voted illegally at said election, or, if they did vote illegally and their vote was thrown out, that that fact would change the result of the election. The trial court thereupon overruled contestants' first motion for a continuance, and added his order to that effect.

On the 20th day of August, 1929, the contestants filed what is styled "First Amended Motion For Continuance," wherein they set out the allegations of their petition as to the disqualifications of the 107 voters, and further that the sheriff, by his return, showed that the witnesses could not be found in Hansford county. Further, contestants allege that they have used due diligence in preparing for the trial of this cause at this term of court, and, inasmuch as all of the above-named persons voted in Hansford county at said election which is being contested by contestants, the contestants had the right to assume that said persons were residents of Hansford county, and could be served with subpœnas in Hansford county, so that their qualifications as voters at said election, and the manner in which they voted, if they did vote at said election, which it is alleged they did, could have been heard by the court; and the contestants had reason to believe, before the sheriff made his return on said day, that said above-named persons were *not* residents of Hansford county, and could *not* be served with a subpœna in this county, and by reason thereof they took no other steps to obtain their testimony by depositions. Contestants further allege in said amended motion that all of the above-named persons would testify, if they were present, that they voted at said election on April 20, 1929, for the removal of the county seat from the town of Hansford, and that they voted at the Spearman voting box, and that they all voted for the removal of the county seat from the town of Hansford to the town of Spearman; that each and all of said witnesses will also show with their testimony that they were not qualified under the law to vote at said election, in this, to wit: [Here setting out the names of *17* of the witnesses only who would so testify].

Further in said motion it is alleged that the testimony of the above witnesses is material and necessary to contestants' cause of action, and they cannot obtain their testimony except by deposition, which could not, by the exercise of reasonable diligence, have been obtained before the last day of the term of this court, for the reason that the term of court ends on August 31, 1929, which term is insufficient for contestants to obtain their testimony by depositions, and that, without the testimony of the above-named witnesses, the contestants cannot safely proceed to trial in this cause.

The contestants further set out in said motion the names of other parties as disqualified voters who were not named in their pleadings, alleging that these parties had been ascertained not to be qualified voters since the filing of their petition herein, and that it was their purpose to amend their petition so as to include said parties; that, if the cause was continued to the next term of court, and contestants could have time and opportunity to follow up their information and evidence that they now have, they could and would be able to show that a great number of illegal votes were cast in said election in favor of the removal of the county seat from Hansford to Spearman, which, if said illegal votes were not counted in declaring the result of said election, the county seat would remain at the town of Hansford.

Contestants prayed that they be granted a continuance to the next term of court in order that they might be able to discover the illegal votes cast at said election, and to amend their petition accordingly and to procure and bring into the court legal and competent testimony proving said fraudulent votes. Contestee filed an answer to this motion, contesting the allegations therein.

The trial court, on August 21, 1929, overruled said amended motion for continuance,

and it appears from the order of the court overruling such motion that the court then and there called on the contestants as to their announcements in said cause, and the contestants then and there, in open court, announced, through their attorneys, that it would be impossible for them to maintain their cause of action and make out their case without the testimony of all the witnesses mentioned in the application for a continuance or amended application for a continuance, and further that the contestants did not care to offer any testimony at all, and declined to offer any testimony, which the court finds is tantamount to a refusal to further prosecute said cause, and thereupon the court dismissed said cause.

In passing upon the appeal in this case, it is only necessary that we consider three questions:

(1) Was there an exercise of due diligence in securing the testimony of the witnesses by contestants?

(2) Was the relief prayed for by contestants in their motion for continuance such as to give them a continuance in the case?

(3) Did the contestants have the legal right, when their two motions for continuance were overruled, of declining to proceed with the trial of the cause without the penalty of having it dismissed, or should they have proceeded with the trial of the case and thus preserved their right to have the action of the trial court reviewed? ·

██ It will be remembered that this petition contesting the election was filed May 11, 1929. The first attempt to secure the attendance of their witnesses was made by contestants on August 2, 1929, seventeen days before the convening of the August term of court, at which term the cause was returnable. That an attempt was made to secure the attendance of 107 witnesses. It will be seen, therefore, that from the 11th day of May, 1929, to the 2d day of August, 1929, eighty-three days had elapsed without any effort being made, as disclosed by the record, to secure the attendance of these witnesses. Can this be said to be the exercise of due diligence, as required by the statute? We think not.

Article 2168, Rev. Civ. St., requires that the applicant for a continuance shall state in such application if he has used due diligence to procure the testimony, and shall state the diligence used. It was certainly not intended that a party in his motion shall foreclose the question as to whether or not he has taken the steps to obtain the attendance of his witnesses by merely stating in the motion that he has used due diligence. That is not all that a statutory motion shall show. The requirement that he shall state the diligence used places on the trial court the duty of determining whether or not contestants used diligence when they took the steps they allege they had taken. This being true, do the facts presented in stating the diligence used, and there presented to the trial judge for his determination, show due diligence. In the case at bar we have an important litigation in which it is charged that 107 persons have been guilty of violating the law by voting in an election when they were not qualified voters. For approximately three months after the filing of the suit, the contestants took no steps to have so numerous a body of witnesses subpoenaed. Due diligence required that processes to secure the attendance of such witnesses should have been applied for at such a time as would render it reasonably certain that they could be served with such processes, and, in the event the officer's return showed the absence of such witnesses from the county, then to give the party seeking their testimony time in which to prepare and file interrogatories for the taking of their depositions. The contestants herein, as stated, waited for nearly three months before applying for their processes and did not take any steps until seventeen days before the court convened.

The contestants do not show that they in any way aided the officer in locating the witnesses' whereabouts, but left that matter entirely to the sheriff. We are entitled to presume that the locating and summonsing of this numerous body of witnesses would require some considerable time—such length of time as would not permit of the filing of interrogatories and the taking of the depositions of that number of witnesses for a hearing at a term of court which only continued two weeks before its termination.

This being our view from the standpoint of lack of diligence, it having been reduced to a question of fact for the trial court to pass upon, we hold that the trial court did not err in overruling the motions.

That the question of diligence as stated in the application is a matter of fact for the determination of the trial court and has so been adjudicated by the effect of decisions, see: G., C. & S. F. Ry. Co. v. Flake, 1 White & W. Civ. Cas. Ct. App. § 253; Poole v. Jackson, 66 Tex. 380, 1 S. W. 75; Watson v. Blymer Mfg. Co., 66 Tex. 558, 2 S. W. 353; St. Louis, S. W. Ry. Co. v. Freedman, 18 Tex. Civ. App. 553, 46 S. W. 101; Galveston, H. & S. A. Ry. Co. v. Robinett (Tex. Civ. App.) 54 S. W. 263; Western Union Telegraph Co. v. Johnsey, 49 Tex. Civ. App. 487, 109 S. W. 251; Equitable, etc., Soc. v. Liddell, 32 Tex. Civ. App. 252, 74 S. W. 87 (writ denied).

The Court of Criminal Appeals of Texas, in the case of Perkins v. State, 22 S.W.(2d) 138, in passing upon the question of a defendant's diligence in having processes issued for his witnesses, holds that, where he

had not applied for same until two months after indictment and arrest, he did not show the exercise of diligence.

■ The second question is one arising upon the interpretation of the prayer of contestants for a continuance. By the language of the prayer, we are compelled to hold that there was an attempt to delay the case for the purposes of investigation and of filing amended pleadings.

■ The third question is one affecting the jurisdiction of this court on this appeal.

When the trial court overruled the contestants' motion for continuance, they declined to proceed with the trial, and declined to offer any testimony, and, as found by the trial judge, refused to prosecute the cause. This being the status of the case, the trial judge was left without any course to pursue but to dismiss the case, and we think that he was correct in holding that the action of contestants was tantamount to a refusal to further prosecute the cause. We think that, by the refusal to offer any evidence, the contestants invited a dismissal of the cause, and thereby gave their legal assent to same. Their course of procedure, when the court overruled their motion for continuance, was to proceed with the trial, introduce the testimony of the 72 witnesses shown to have been present in the courtroom, and, if it developed that the witnesses who had not been summonsed were shown to be necessary to prevent an adverse judgment against them, the contestants should then have assigned error on the refusal of the court to sustain their motions.

The contestants' statement that it would be impossible for them to go to trial without the testimony of the absent witnesses was purely ex parte.

If the rule were otherwise than as laid down above, any party to a suit who was bent on delay of the trial could make a motion for continuance, and, when it was overruled, refuse to proceed, have the court dismiss his cause, and then appeal from the dismissal.

It was the duty of the contestants, as stated above, to prosecute their suit and to develop their case in such manner as to establish the fact that the testimony of the absent witnesses was necessary to prove their case. This they did not do.

The contestants, by their counsel, insist that the law does not demand the performance of a useless thing; that they would not be required to try the case when they knew that they could not prove their case without the evidence of the absent witnesses. But, on the other hand, a trial court is not required to speculate in the administration of justice. The court was entitled to have contestants try their case upon such terms as he thought

the law required. If on the development of the case he found that he had committed error, then it would have been his duty to granted a new trial. But, if it should have developed that the testimony of the absent witnesses given in court would not change the result of the contest, it certainly could not be held that he committed error in overruling the motions for continuance.

The refusal of the contestants' attorney to read his pleadings or to offer any evidence, as stated, was, in effect, an abandonment of the prosecution of his case. It was as much so as an entire failure to appear would have been. In that state of the case, the only order that the court could have properly made was one dismissing the cause for want of prosecution. Burger v. Young et al., 78 Tex. 656, 15 S. W. 107. See, also, Ellerd v. White (Tex. Civ. App.) 251 S. W. 274, 276; Ware v. Jones (Tex. Com. App.), 242 S. W. 1022, 1023.

We therefore affirm the judgment of the trial court.

HALL, C. J., not sitting.