**WESTERN UNION TELEGRAPH CO. v. GAUNTT.**

No. 12326.

Court of Civil Appeals of Texas. Fort Worth.
May 3, 1930.

Thompson & Barwise, of Fort Worth, C. T. Gettys, of Decatur, Francis R. Stark, of New York City, and Fred L. Wallace, of Fort Worth, for appellant.

W. C. Shults and H. E. Lobdell, both of Decatur, for appellee.

CONNER, C. J.

This suit was instituted by R. N. Gauntt in the district court of Wise county to recover $2,500 compensation for alleged mental anguish caused by appellant's alleged failure to seasonably transmit and deliver the following telegram:

"Vernon, Texas.
"6:33 P. M. March 4, 1927.
"R. N. Gauntt,
"Rhome, Texas.
"Alma not expected to live.
"R. L. Snodgrass."

"The appellee, Gauntt, lived near Rhome, Tex., and the Alma named in the telegram was his sister. She was in a hospital in Vernon, Tex., critically ill and had been for several days. E. L. Snodgrass, for and in behalf of appellee, delivered the telegram for transmission to appellant's receiving agent at Vernon at 6:33 p. m. on the 4th day of March, 1927, paying the customary charges therefor.

Appellee alleged that if the telegram had been transmitted with due diligence it would have been received in time for him to go by automobile and arrive at the bedside of his sister and talk with her before her death, which occurred about 1 o'clock a. m. on March 5, 1927, but that the telegram had not in fact been transmitted and delivered until about 9:47 p. m. on March 4, 1927, when it was too late to journey by automobile and see his sister before her death, because of which he suffered great mental anguish.

Besides demurrers and general and special denials, appellant pleaded specially the following, which we take from its brief and which it is alleged constitutes, under the circumstances, a special contract which precludes a recovery:

"Appellant further alleged as answer to appellee's petition, that at the time said message was delivered to appellant at Vernon, Texas, at or about 6:30 p. m., March 4, 1927, the agent of the appellant herein advised the agent of the appellee that the destination station of the message at Rhome, Texas, was a railway station, and that said station did not have office hours, and that he could not agree to have said message delivered prior to the morning of the next day, but that said message would be delivered as soon as possible."

The court, after defining "ordinary care," "negligence," and "proximate cause," submitted the case to the jury on special issues, which, together with the answers of the jury, are as follows:

"1. Did the defendant, or its agents, on the occasion in question use ordinary care in handling and dispatching the telegram in question to plaintiff, at Rhome, Texas, within a reasonable time after they received same? Answer: No.

"2. If the plaintiff had received the telegram in question within a reasonable time after the same had been delivered to defendant's agents, could he by the use of a private automobile have reached the bedside of his sister, Alma Gauntt, before her death? Answer: Yes.

"3. If the plaintiff had received the telegram in question within a reasonable time after the same had been delivered to defendant's agents, would he have gone by private automobile in time to have reached the bedside of his sister, Alma Gauntt, before her death? Answer: Yes.

"4. Did the plaintiff on account of having failed to reach his sister's bedside before her death at Vernon, Texas, suffer any mental anguish? Answer: Yes.

"5. Was the failure of the defendant to promptly transmit and deliver said telegram to plaintiff at Rhome, Texas, the proximate cause of the plaintiff's failure to reach his sister's bedside before her death? Answer: Yes.

"6. What amount of money do you consider and find would fairly compensate the plaintiff for his mental anguish suffered by him by reason of having failed to reach the bedside of his sister before her death? Answer: $800.00.

"In answering the foregoing special issue No. 6, you are instructed that you cannot take into consideration or consider, any grief or mental anguish, if any, that the plaintiff may have suffered on account of the death of his said sister, nor can you allow any damages for the grief or mental anguish suffered by him on account of her said death."

The following special issues were requested and given and answered as follows:

"1. (a) Did the agent of the defendant at Vernon, Texas, advise E. L. Snodgrass, the sender of the message that the same would be delivered only in the event that an operator was on duty serving trains at Rhome, otherwise it would be delivered the following morning? Answer: Yes.

"(b) Did the sender of the message deliver the message to be sent under the terms and conditions set forth in the preceding question? Answer: Yes.

"(c) Was the message in question received and transmitted by the defendant in compliance with such agreement? Answer: No.

"2. (a) Was the plaintiff guilty of negligence as that term has been defined in the court's charge, in failing to go to his sister after having been advised of her serious condition by telephone on March 1st? Answer: No.

"3. Was the agent of the defendant company at Vernon, Texas, advised of the relationship between the addressee of the message and the party named therein, at the time same was delivered to it for transmission? Answer: No.

"4. If the message in question had been delivered to plaintiff at the time he alleges it should have been, would he have gone to Vernon on the first train going in that direction from Rhome thereafter? Answer: No.

"5. (a) Was the plaintiff, R. N. Gauntt, guilty of negligence, as that term has been defined to you by the court, in not starting immediately from Rhome to Vernon, Texas, after the receipt of the message in question? Answer: No."

Upon the findings of the jury, the court rendered judgment for appellee in the sum of $800, and appellant has duly prosecuted this appeal.

Under propositions 1 and 2, appellant urges that the evidence supports the special contract, pleaded by it and quoted above, and hence that the court erred in refusing to instruct a verdict in its favor. The receiving agent at Vernon testified that the telegram in question was delivered to him for trans-

mission at 6:30 p. m. on March 4, 1927; that when Mr. Snodgrass delivered the telegram to him he said:

"I looked it up in the tariff book. In the tariff book no office hours have been shown. I told him the message would be delivered if there was a train running, I told him this was a railroad office, and the message would be delivered if a train was running and not until next morning if not. Mr. Snodgrass said to go ahead and send it and I told him I would make every effort to deliver it. He did not state any relationship existing between he and Mr. Gauntt; he just said to send the message."

On cross-examination he said:

"I did not know if any trains ran through Rhome that night. If trains passed through Rhome that night I knew they would have an operator there. I took the message with the understanding, that a man would be there and promptly receive and handle and deliver it as quick as they could get to it. By the language of the message 'Alma not expected to live,' I understood it to be urgent, that somebody was about to die, and I took it for the telegraph company with that understanding, yes, because somebody was expected to die and that it was urgent, that is the way I took it, yes. * * * Yes, the company got thirty-six cents for the telegram."

■■ It is undoubtedly the duty of a telegraph company to use ordinary care to transmit and deliver to the person addressed all messages accepted by it for transmission; and where it fails to exercise such care, it is liable to the person for whose benefit the message is sent for the damage he may sustain by reason of such failure. See Western Union Tel. Co. v. Johnsey, 49 Tex. Civ. App. 487, 109 S. W. 251; Gulf, C. & S. F. Ry. Co. v. Wilson, 69 Tex. 739, 7 S. W. 653; Western Union Tel. Co. v. True, 101 Tex. 236, 106 S. W. 315; So Relle v. W. U. Tel. Co., 55 Tex. 308, 40 Am. Rep. 805; Gulf, C. & S. F. Ry. Co. v. Levy, 59 Tex. 542, 46 Am. Rep. 269.

In Western Union Tel. Co. v. Cooper, 71 Tex. 507, 9 S. W. 598, 1 L. R. A. 728, 10 Am. St. Rep. 772, it was held that the messenger of the company should have used reasonable diligence to deliver the message even if that would require him to go upon the streets to find the person to whom the message was sent. That what such diligence was, would depend upon the circumstances, of which the jury were the exclusive judges.

■■ While a telegraph company may establish office hours for the transmission, receipt, and delivery of messages (Western Union Tel. Co. v. Rawls [Tex. Civ. App.] 62 S. W. 136), we cannot agree with the contention made in behalf of appellant that the telegram in question was delivered for transmission under a special contract that relieved the company of all duty of diligence until the following morning. The special contract as alleged, construed in the light of the decisions, was that the message should be transmitted and delivered "as soon as possible"; the delivery contemplated by the contract being excusable in event only the station at Rhome "did not have office hours," or, adopting the language of the receiving agent, "if no trains were running." The evidence shows without dispute that at least two trains were running that night and that the receiving agent in fact transmitted the telegram to Rhome before the following morning, to wit, on or about 9:47 p. m. of the day upon which the telegram was received for transmission. Moreover, C. V. Wales, a witness for appellant testified that:

"My occupation is telegraphing or railroading. I was employed at Rhome, Texas, March 4, 1927. I was employed in the telegraph department of the Fort Worth & Denver Railroad Company, and also handled Western Union Telegraph messages at Rhome, Texas. Yes, on or about March 4, 1927, I received at Rhome, Texas, a telegram for Mr. R. N. Gauntt from Vernon, Texas. * * * At the time I received the message I telephoned it to the party to whom it was addressed. * * * According to my record it shows it was phoned at 9:47 o'clock and delivered at 9:41, receipted, yes. That is six minutes. * * * There were two tricks at Rhome when I was there. Well, it is what you call a split trick. There is an agent and an operator there. The agent at that time was Mr. McGlothlin. His hours were from 7:30 to 4:30, and my hours were from 6 p. m. to 2 a. m. We had hours at Rhome for delivering messages that arrived during the day. The agent delivered them between 7:30 a. m. and 4:30 p. m. The only way messages were delivered while I was on duty was by telephone."

■ It is thus seen that the receiving agent retained in his hands the message in question some three hours before transmission, and we think it was for the jury to say that the receiving agent evidently in the interim by wire had ascertained the fact that he could transmit the message before the following morning, and whether his failure to exercise due care to ascertain the fact shown that there was an agent in charge of the Rhome office who could and would at once have accepted the telegram constituted negligence.

■■ Prior to the submission of special issues as prepared by the court, appellant duly presented written objections to special issues 5, 2, and 3, as being upon the weight of the testimony. The objections were overruled and exception taken, and by a number of propositions it is insisted that the court erred in overruling the objections. Reading the issues in the order above stated, to wit, 5, 2, and 3, we think they were on the weight of the evidence. Issue No. 5 is susceptible of

the construction that the defendant had failed to promptly transmit and deliver the telegram and the jury may have so interpreted it, whereas that question was for the jury's determination, freed from any real or apparent expression on the part of the court. So, too, issues Nos. 2 and 3 embody the assumption that the plaintiff had not received the telegram in question within a reasonable time after it had been delivered for transmission. While not assigned as error, it may be proper in this connection to also note that special issue 6 submitted by the court is also on the weight of the evidence, in that it is therein assumed that appellee suffered "mental anguish."

The issue of negligence vel non in the transmission of the telegram from Vernon to Rhome was a vital issue in the case, and was nowhere submitted by the court in its charge to the jury, and we think it therefore error for the court to have assumed, as was done in the special issues referred to, the existence of issues vitally involved. Article 2185, Rev. Statutes of 1925, provides that in giving instructions to the jury the trial court shall not comment in such instructions on the weight of the evidence, and questions of the kind have been frequently passed on by the courts. See, as supporting the conclusions we have reached, Hines v. Thornton (Tex. Civ. App.) 251 S. W. 523; Austin Gaslight Co. v. Anderson (Tex. Civ. App.) 262 S. W. 136; Shaver v. Mason (Tex. Civ. App.) 13 S.W.(2d) 450; Pullman Co. v. Moise (Tex. Civ. App.) 187 S. W. 249; Missouri, K. & T. Ry. Co. v. Smith, 63 Tex. Civ. App. 510, 133 S. W. 482; Northern T. T. Co. v. Peterman (Tex. Civ. App.) 80 S. W. 535; Missouri, K. & T. Ry. Co. v. Jordan (Tex. Civ. App.) 2 S.W.(2d) 312; Fort Worth Belt Ry. Co. v. Johnson, 59 Tex. Civ. App. 105, 125 S. W. 387; Missouri, K. & T. Ry. Co. v. Wolf, 40 Tex. Civ. App. 381, 89 S. W. 778.

■ Before the submission of the court's charge, objection to special issue No. 4 was made because not accompanied by a definition of "mental anguish," and later appellant requested the following instruction:

"You are instructed in arriving at the answer to special issue No. 4, that mental anguish is that keen and poignant suffering which results from some great grief, and in this connection, the mere disappointment, anger, worry, mental disturbance or injury to feelings, does not constitute mental anguish."

Appellee Guantt testified:

"Yes, I was very much disappointed in not getting to the bedside of my sister. I was sore because the message was not delivered to me in time, and felt bad because my sister was sick, and also felt bad over the fact that she died. I felt bad whether I had been there or not, and felt as bad as I could because she died. I had mental anguish about that, yes. I would have felt bad whether I could have gone or not, yes. I felt bad about it just because she was ill and was not expected to live."

On redirect examination, in response to questions by counsel, appellee testified:

"I suffered disappointment by not being there and saying the last words to her, yes."

He further testified to the effect that had the telegram been delivered promptly, he could and would have gone by automobile to Vernon, a distance of some 140 miles, and could and would have been enabled to have been at the bedside of his sister before her death. While there was also testimony to the effect that she was unconscious much of the time during the night preceding her death, yet there was testimony tending to show that he would have at least been able to have been present and to have seen her if not to have talked to her before she died. The evidence as a whole, however, including that which we have quoted, made it material for the jury to have a clear conception of the character of mental pain or anguish for which damages in cases of this kind are recoverable.

Article 2189, Rev. Statutes of 1925, provides that:

"In submitting special issues the court shall submit such explanations and definitions of legal terms as shall be necessary to enable the jury to properly pass upon and render a verdict on such issues."

And in the case of Western Union Tel. Co. v. McCormick, 240 S. W. 697, writ of error denied, by the El Paso Court of Civil Appeals, a definition of the term "mental anguish," such as requested by appellant in this case, seems to have been approved, in effect, and in 3 Words and Phrases, Second Series, 365, it is said:

" 'Mental anguish' is a high degree of mental suffering, and not mere disappointment or regret."

Webster defines "anguish" as "extreme pain either of body or mind."

■ We do not feel quite prepared to wholly approve the definition of mental anguish taken from the case of Western Union Telegraph Co. v. McCormick. However, appellee will be entitled to recover damages for such high degree of mental pain and distress, if any, as was naturally and proximately caused alone by the negligent failure, if any, of appellant to promptly transmit and deliver the telegram in question. The vital question in this respect is: Did appellee suffer mental pain because he was wrongfully prevented from going to Vernon by auto and thus to have seen his sister before her death? If he was, and would have so traveled and have been enabled to so see his sister, he would be entitled to compensation for the mental pain thus arising; but we think appellant was en-

titled to have the jury instructed that in considering special issue 4 submitted by the court they should exclude all mental disturbance or pain otherwise arising, such as mere anger or resentment or mental pain caused by the sickness and death of his sister. The extent or degree of mental anguish, if any, for which recovery may be had is material for consideration in the determination or measurement of the amount of damages to be assessed. We think the views so expressed will enable the trial court upon another trial to properly instruct the jury upon the evidence as it shall then be developed.

Because issues 2, 3, and 5 were upon the weight of the evidence, the judgment below must be reversed and remanded for another trial, and it is so ordered.