## HUTT v. HUTT.
### No. 10010.

Court of Civil Appeals of Texas.
Galveston.

Nov. 8, 1934.

Rehearing Denied Dec. 6, 1934.

Stewarts and W. N. Zinn, all of Galveston, and McLean, Scott & Sayers and Rufus J. Lackland, Jr., all of Fort Worth (Glover Johnson, of Fort Worth, of counsel), for appellant.

M. L. Cook and Levy & Levy, all of Galveston, for appellee.

GRAVES, Justice.

This appeal is from a judgment divorcing the parties, which in part recites:

"This cause came on to be heard in its regular order on the 25th day of January, A. D. 1933; and the plaintiff appeared in person and by attorney and announced ready for trial; and the defendant appeared in person and by her attorneys and filed and submitted motion for a continuance which, upon due consideration, was by the Court found to be wholly insufficient and without merit, and, therefore, overruled; and both parties having waived a jury, the cause proceeded to trial, the matters in controversy, as well of fact as of law, being submitted to the Court; and the Court, having heard the pleadings, evidence and the argument of counsel and being fully advised in the premises, is of the opinion that the material allegations in plaintiff's petition are true and are established and proved by full and satisfactory evidence; and it appearing to the Court from such evidence that the cruel treatment of plaintiff by defendant as alleged in plaintiff's petition renders the further living together of the plaintiff and defendant insupportable, the Court is of the opinion that plaintiff is entitled to the relief prayed for in his petition."

After so decreeing, the learned trial court also filed these findings of fact and conclusions of law:

"Findings of Fact.

"The Court finds as a fact that the plaintiff, J. R. Hutt, at the time of the filing of this suit was an actual bona fide inhabitant of the State of Texas and had been such continuously for more than twelve months immediately next preceding the filing of this suit and also that plaintiff resided continuously in Galveston County for more than six months immediately next preceding the filing of this suit.

"That all of the material allegations contained in plaintiff's petition were established upon the trial of this cause to be true to the satisfaction of this Court.

"That the Court finds from the evidence to its satisfaction that defendant was guilty of such excesses and cruel treatment toward plaintiff as to render their further living together as man and wife insupportable.

"The Court also finds from all the facts and circumstances in evidence in this cause that plaintiff gave the defendant no cause or justification for the acts of cruelty committed by defendant against plaintiff.

"Conclusions of Law.

"I therefore conclude as a matter of law that plaintiff is entitled to a decree dissolving the bonds of matrimony heretofore existing between plaintiff and defendant."

The material averments of the appellee's petition thus referred to, and upon which the divorce was granted, in epitome, were these:

"II. That plaintiff and defendant had formerly been married, to-wit, on or about June 22, 1927, and that on April 21, 1931, defendant secured a divorce from plaintiff in Fort Worth, Texas; that they were again married at Marietta, Oklahoma, on May 15, 1931, which remarriage was accomplished and performed while plaintiff was bereft of his faculties and incapable of resisting or refusing to enter into such marriage.

"III. That immediately after the remarriage aforesaid, defendant instituted a course of harsh, cruel, and outrageous conduct toward plaintiff; that she studiously did everything within her power to make his existence unbearable; that by her constant nagging and fussing she undermined plaintiff's health; that such studied course of conduct has continued without intermission since immediately after the time of such remarriage.

"IV. That defendant is an habitual drunkard; that on occasions too numerous to specify defendant has returned home in a state of intoxication, and on many occasions has become so intoxicated that she was unable to come home alone, but had to be brought home by others; that she constantly and continually appeared in public places in a state of intoxication and at every opportunity would intentionally embarrass and humiliate plaintiff. That on occasions too numerous to specify, defendant has cursed and abused plaintiff, calling him vile and unprintable names and epithets; that she would strike him with chairs, furniture, kitchen-utensils, bottles, or anything she could seize upon; that defendant is a woman of high and uncontrollable temper; that in fits of anger she has struck plaintiff and seriously injured him; that on many occasions defendant has threatened to kill plaintiff, thereby causing him to be in continual fear of his life.

"V. That on or about the 19th day of March, 1932, while they were living together in the City of Galveston, defendant, without telling plaintiff that she was going, left plaintiff and drove in her automobile to Fort Worth, where she remained for about three months, returning to Galveston about the 15th of June, 1932. That plaintiff gave defendant no cause to abandon and desert him, but left of her own accord; that upon her return to Galveston she continued her course of harsh, cruel, and outrageous conduct toward plaintiff, making his existence unbearable. That plaintiff, because of such conduct, was unable to stay at his home without endangering his life and health. That about the 5th day of July, 1932, defendant, without any provocation whatsoever from plaintiff, threatened to kill plaintiff and attempted to carry out such threat, striking plaintiff on the neck and shoulder with an electric iron; that plaintiff was put in fear for his life by such assault, and was afraid that defendant would kill him; that plaintiff considered it unsafe to remain with defendant and sought refuge at another place.

"VI. That on or about the 5th day of July, 1932, during his absence from his home, defendant gathered together all of his clothing and personal effects and secreted them in order to harass and inconvenience him, because she knew he was without funds to provide himself with other clothing; that though often requested, defendant refused to restore such clothing or to inform him where same had been concealed, until the time hereinafter set out.

"VII. That on or about the 9th day of July, 1932, defendant, without cause, justification, or provocation whatsoever, filed a criminal complaint against plaintiff, charging him with a felony, to-wit, Wife Desertion; that under the existing facts and the laws of the State of Texas, such charge was wholly fictitious, groundless, unfounded, and the filing thereof was a designed and willful attempt on the part of defendant to vex, harass, embarrass, and humiliate plaintiff. That on or about the 13th day of July, 1932, defendant agreed with plaintiff that if he would deliver her automobile to her, which plaintiff then had in his possession, she would return all his clothing and other effects which she had taken, and would dismiss said charge against plaintiff and not refile same; that although plaintiff knew defendant would tell the truth and abide by her agreement only as a last resort, he entered into such agreement with defendant as the only course by and through which he could recover his said clothing and other effects, of which he was in dire need; that defendant had no intention of abiding by such agreement, and, despite having made same, immediately after plaintiff had delivered to her said automobile, as agreed, defendant refiled the identical charge, based on the same fictitious representations, as was the original charge; that the filing of this second charge was within about twenty or thirty minutes after dismissing the original charge; that defendant caused and procured a warrant for the arrest of plaintiff to be issued and caused two police officers of the City of Galveston, both of whom were in full police uniform, to go to a certain hotel in the City of Galveston where she knew plaintiff to be, and there to make his arrest; that such arrest was made and accomplished in the lobby of said hotel and in the presence of a large number of people, thus accomplishing defendant's purpose, to-wit, the humiliation and embarrassment of plaintiff, and thereby bringing him into disrepute in the eyes of many of his friends, acquaintances, and the public generally; that said police officers took plaintiff to the jail of the City of Galveston, where on said fictitious and groundless charge, he was imprisoned as any ordi-

nary criminal; that defendant knew that plaintiff was without funds and could not make a bond for his release and hoped by the filing of such fictitious and groundless complaint to cause plaintiff to be imprisoned indefinitely and hoped to and did accomplish the purpose of bringing plaintiff into disgrace and disrepute in the eyes of the public. That defendant, in an effort to further harass and vex plaintiff, and to inconvenience him as much as possible, hired an attorney especially to prosecute plaintiff in the courts of this State, notwithstanding that the State of Texas furnishes such prosecutors without cost; that defendant knew and realized that such charge was groundless, fictitious, and wholly false, and knew and realized that the public officers and servants of this state would not prosecute said case; that under the laws of this state plaintiff has committed no offense whatsoever.

"VIII. That he has been compelled to live with defendant against his wishes; that he has been compelled to undergo her continued harsh, cruel, and outrageous conduct ever since their marriage by the threats and acts of defendant as hereinafter set out, to-wit, that ever since the time of the marriage plaintiff has desired to secure a divorce from this defendant and has had ample grounds therefor; that on every occasion when he has suggested this to defendant, she has threatened to bring some sort of fictitious, groundless, and unfounded suit for damages against plaintiff's mother and/or other members of his family; that plaintiff's mother is old, nervous, excitable and unfamiliar with lawsuits, litigation, and similar proceedings; that prior to this time plaintiff has undergone such treatment by defendant in order to prevent suits being filed, fearing that a suit of any character against his mother, although entirely fictitious, would bring about her death; that defendant knows she has no cause of action against plaintiff's mother and/or any other person or persons, but threatens to bring such groundless action in an effort to extort money from plaintiff and/or the members of his family; that defendant is a mean, avaricious, and mercenary woman; that she does not love plaintiff and her sole purpose in living with him is in pursuance of a scheme to secure a large sum of money from either plaintiff, his mother, or other members of his family; that plaintiff has endured defendant's conduct as long as is humanly possible; that he is now on the verge of a nervous breakdown, that his health has been impaired, and that he can no longer live with defendant. That defendant has, on numerous occasions, endeavored to persuade plaintiff to agree to pay her a large sum of money and has stated that if he would do so, she would secure a divorce; that plaintiff cannot pay any amount of money whatsoever, because he now alleges that he has no property or money, all of which is well known to defendant.

"That the further living together of plaintiff and defendant has been rendered insupportable by reason of the acts and conduct of defendant as aforesaid."

■ In this court, on the merits, appellant's able counsel freely concede that "unless it can be made to appear as a matter of law that the plaintiff was either equally guilty with defendant, engaged in the same kind of conduct toward her as that of which he complained, or goaded her into doing the things of which he complained, or did such things as caused her naturally to do the things of which he complains—in other words, that the defense of recrimination is good— the defendant will be bound by the (quoted) findings of the trial court," then cite in support of their contention that such recrimination, barring the divorce, was here so established, notwithstanding the presumed truth in fact of all that is material in these charges. Hale v. Hale, 47 Tex. 336, 26 Am. Rep. 294, and Bohan v. Bohan (Tex. Civ. App.) 56 S. W. 959.

Fatal vices shown to exist in this position, however, are:

(1) Many of the material acts of cruelty so declared upon were shown to have been committed by appellant after the final separation of the parties in early July of 1932, which included all her acts in connection with the filing, dismissing, refiling, and prosecution of criminal charges of wife desertion against him—found by the trial court not only to have been filed without justification but maliciously.

(2) Other material acts alleged that occurred before such final separation were, on sufficient evidence, found by the trial court not to have been provoked or justified by any conduct of the appellee; among these are included her striking him on numerous occasions with furniture and household utensils, calling him the vile name appearing in the record, continuously nagging at him, and, finally, not only constantly threatening fictitious suits against members of his family, but even threatening to kill the appellee.

There is thus shown to have been a complete hiatus between the controlling acts upon which the divorce must have been granted and any conduct in turn of the appellee that

is claimed to have rendered him guilty of recrimination; both of the authorities cited by appellant, supra, recognize the law on this subject to be that the misconduct of a plaintiff in divorce cases must be of the same general character with, and be reasonably calculated to have provoked, that of the defendant, and that, if the latter's retaliatory acts were so grossly excessive over the provocation as not to have been reasonably caused by it, there is in law no recrimination. Other authorities to the same effect are: Trigg v. Trigg (Tex. Sup.) 18 S. W. 313; Jasper v. Jasper (Tex. Civ. App.) 2 S.W.(2d) 468; Jones v. Jones, 60 Tex. 451; McCracken v. McCracken (Tex. Civ. App.) 11 S.W.(2d) 397.

Not only so, but in the McCracken Case, supra, it is held that the conduct of the plaintiff prior to the separation, regardless of what it was, is wholly immaterial, where his suit is based on that of the defendant occurring after the separation, wherefore the legal doctrine of recrimination does not apply.

Under the findings that must be regarded as established facts, it is therefore clear that the divorce was justified upon either of the considerations just stated; as against the first of them, the alleged anteseparation derelictions of the appellee, and their name is legion, were not even admissible; as against the other, on the face of the proceedings it is obvious that different ones of appellant's acts were either nonretaliatory at all in the legal sense or so grossly excessive over any provocation shown that they could not reasonably be said to have been caused thereby; in this category, for instance, were her continual threats of unjustifiable suits for money against members of his family throughout the period from their remarriage until this trial, after having in effect exacted from appellee's father $7,500 as the price of their first divorce, because, forsooth, the appellee during all that time desired a divorce or annulment, which he would have sought but for the sword of Damocles she thus kept suspended above him. The record is pregnant with other like acts, but it is deemed unnecessary to detail them here.

Appellant makes two further presentments for reversal: (1) That her application for a continuance, claimed to have been the first one, was improperly overruled; (2) that the trial court was without jurisdiction to hear the suit on the appellee's amended petition filed on the day of the trial, for the reason that his original petition had been fatally defective in failing to sufficiently allege his residence and domicile to have been in Galveston county and state of Texas for the required time.

■ Neither of these contentions is well taken; as concerns the first, the record now here shows the application for continuance to have been a second one, not a first; it further appearing that no bill of exceptions to the overruling of it was taken, and that it did not meet the requirements of R. S. art. 2168, neither showing the materiality of the testimony of the absent witness named, nor the facts expected to be shown by her, nor her residence, nor, finally, did the application show what, if any, diligence was used to procure her presence or her testimony at the trial. R. S. arts. 2237 and 2168; Rules 55 and 70 for District Courts; 3 Tex. Jur. p. 589; 9 Tex. Jur. p. 744; Hamilton v. Dismukes, 53 Tex. Civ. App. 129, 115 S. W. 1181; Oilmen's Reciprocal Association v. Hayes (Tex. Civ. App.) 295 S. W. 675; Maupin v. King (Tex. Civ. App.) 25 S.W.(2d) 153; San Antonio Traction Co. v. Davis (Tex. Civ. App.) 101 S. W. 554.

■ As concerns the claim of lack of jurisdiction, the record conclusively shows that the appellee invoked the jurisdiction of the court in his petition of July 22, 1932, wherefore the filing of his amended petition of 1933 was not a filing of this suit within the contemplation of R. S. art. 4632; the same cause of action for divorce being declared upon in the original as was in the amended petition. McCullough v. McCullough, 120 Tex. 209, 36 S.W.(2d) 459; R. S. arts. 4631 and 4632; Hayward v. Hayward (Tex. Civ. App.) 53 S.W. (2d) 108; Barras v. Barras (Tex. Civ. App.) 217 S. W. 252; Green v. Green (Tex. Civ. App.) 45 S.W.(2d) 331.

Pursuant to these conclusions, the trial court's judgment has been affirmed, with Justice LANE dissenting.

Affirmed.

LANE, J., dissenting.