**ROOSTH & GENECOV PRODUCTION CO.**
**et al. v. SHELL OIL CO., Inc.**

No. 9416.

Court of Civil Appeals of Texas. Austin.
Nov. 3, 1943.

Rehearing Denied Nov. 24, 1943.

M. H. Barton, of Overton, for appellants.

R. H. Whilden, of Houston, Dan Moody, and J. B. Robertson, both of Austin, for appellee.

McCLENDON, Chief Justice.

Rule 37 case. The appeal is from a final judgment cancelling a permit to drill well No. 3 on a 1.61-acre tract in the East Texas Oil Field and enjoining production thereunder. The Shell (Shell Oil Company, Incorporated, owner of a leasehold upon an adjoining tract) was plaintiff, and the Commission (Railroad Commission of Texas) and R&G (Roosth & Genecov Production Company, a Texas corporation) were defendants. The permit was granted as an exception to Rule 37, to prevent confiscation of property and physical waste. R&G alone has appealed.

Two assignments of error (urged also as points) are presented. These complain of the following rulings of the trial court:

1. Overruling a motion of R&G for continuance based upon the fact that Isadore Roosth, an alleged necessary witness and alleged owner of an interest in the leasehold, was in the U. S. Army and entitled to the benefits of the Soldiers' and Sailors' Relief Act of 1940, Title 50 U.S.C.A.Appendix, §§ 501–590.

2. Failure of the Shell to show a litigable interest in the suit, in that it was not shown that drilling the well would deprive Shell of its fair chance to recover the oil and gas under its lease or its equivalent.

Upon the first point the record shows: The permit was granted to R&G upon its application as "company or operator" October 30, 1940, and motion for rehearing overruled November 20, 1940. The suit was filed November 29, 1940. Answers were filed: by R&G December 14, 1940; and by the Commission January 6, 1941. October 19, 1942, R&G filed a plea in abatement predicated upon defect of necessary parties defendant, alleging that R&G never owned an interest in the leasehold, but merely managed the operation of production therefrom under a contract with the owners, alleged (among others named) to include Isadore Roosth; and that R&G "is not authorized nor empowered to appear for or on behalf of said lease owners herein, nor to defend this suit for such lease owners." No action appears to have been taken upon this plea. The same issue was raised in Railroad Comm. v. Shell Oil Co., Tex.Civ.App., 164 S.W.2d 773, error refused, wherein it was held that the lease owners were not necessary parties to a suit to cancel the permit. The motion for continuance was filed November 23, 1942, by R&G and verified by its attorney of record; the same attorney who represented R&G in the trial both on the motion and on the merits of the case. The motion refers in several instances to "these defendants." This reference is manifestly to Isadore, Harold and Solomon Roosth, alleged to be owners of interests in the leasehold, none of whom was a party to the suit. The motion does not purport to be made in their behalf, the prayer being "the defendant Roosth & Genecov Production Company requests that this cause be postponed in accordance with the above mentioned regulations (Relief Act) until the military service of Isadore Roosth expires." The salient allegations of the motion, stated substantially except where quoted, are: "these defendants cannot safely go to trial at this term of court on account of the absence of Isadore Roosth, who is a necessary witness of these defendants" and owner of $\frac{1}{14}$ of the leasehold; said Isadore "has been the field manager and superintendent of the actual drilling and production" of the well in issue; he was suddenly called into the U. S. armed service April 27, 1942, is now serving as a soldier in the U. S. Army and unable "to appear in person as a witness" in his own or in behalf of "these defendants, and will not be able to attend the trial until his services are no longer needed by the Government"; said Isadore "who had prepared to testify on behalf of these defendants" is a graduate engineer of A. & M. College with seven years' experience, was present and superintended drilling the well, "is thoroughly familiar with the entire well log and the various said conditions in this particular locality and with conditions in the surrounding localities, and he was thoroughly prepared to testify to said facts and conditions, and his actual experience and knowledge as a graduate engineer thor-

oughly qualifies him to so testify in behalf of these defendants; and it is impossible to obtain anyone who can testify to the above facts of said conditions and of the necessity of drilling the well to prevent actual waste and confiscation"; and he can not appear and testify until released by the Government; if he "can testify in person they (said defendants) believe that he can show the court that the permit to drill the well in question is valid and that the said well is necessary to prevent the waste of oil and the unlawful confiscation of oil"; his "ability to assist defendants in the defense" of the suit will be "seriously affected and impaired" by his absence from the trial "in that he knows facts that no other person is prepared to testify about," and his presence is necessary to advise in the defense in order to protect his own and other defendants' interests; and he "individually and these defendants in this case are entitled to have this cause continued or postponed under the terms of the Soldiers' and Sailors' Civil Relief Act of 1940." By stipulation made on June 29, 1943, the day the motion was overruled, it was shown that the case had been set for trial for 5/5/41, 11/24/41, 2/23/42, 3/30/42, 9/19/42, and 11/30/42, but it was impossible to get a trial at any of these settings, although plaintiff always desired to have a trial; 12/1/42 the case was continued and reset for 1/11/43 and again for 2/23/43, on which date it was postponed on motion for 90 days, "and at that time it was stated in open court that if defendants desired to obtain the testimony of the" witnesses "referred to in the motion the plaintiff would cooperate with them in taking their depositions on written interrogatories if they desired," but no request had been made for taking the depositions; the case was then set for 5/24/43, when it was again postponed and reset for 6/28/43, in order to enable R&G to employ other counsel, one of their attorneys, Mr. Harry Pollard, having been called into the military service about a week theretofore. No additional counsel appears to have been employed.

The applicable sections of Title 50 U.S.C. A.Appendix, are §§ 521 and 524, which read:

"§ 521. At any stage thereof any action or proceeding in any court in which a person in military service is involved, either as plaintiff or defendant, during the period of such service or within sixty days thereafter may, in the discretion of the court in which it is pending, on its own motion, and shall, on application to it by such person or some person on his behalf, be stayed as provided in this Act, unless, in the opinion of the court, the ability of plaintiff to prosecute the action or the defendant to conduct his defense is not materially affected by reason of his military service."

"§ 524. Any stay of any action * * * may, except as otherwise provided, be ordered for the period of military service and three months thereafter or any part of such period, and subject to such terms as may be just * * *. Where the person in military service is a codefendant with others the plaintiff may nevertheless by leave of court proceed against the others."

■ It is to be observed that the motion is predicated solely upon the Relief Act. It does not purport to comply with Rule 252, T.R.C.P., which requires that if the ground of the application be want of testimony it must show the materiality thereof "and that he has used due diligence to procure such testimony, stating such diligence, and the cause of failure, if known; * * * and, if it be for the absence of a witness, he shall state * * * what he expects to prove by him; and also state that the continuance is not sought for delay only, but that justice may be done." None of these allegations was even attempted to be made, except that relating to the character of testimony of Isadore Roosth, which was manifestly inadequate, as we show below.

■ As to the Relief Act: It must be held in mind that that Act is solely for the benefit of the service man (and others specified therein, but not involved here); and relates to actions to which the serviceman is a party plaintiff or defendant. Neither Isadore nor either of the other Roosths was a party to the suit or a necessary party thereto. Their interests were represented (along with those of other owners of the lease) by R&G, who obtained the permit and was operating the lease under contract with all the owners. But even if the Roosths had been parties to the suit and had made the application in their own behalf, we are clear in the view that it was properly overruled.

■ The suit was brought under Sec. 8 of Art. 6049c, V.A.C.S., which directs that "Such suit shall be advanced for trial and be determined as expeditiously as possible and no postponement thereof or continu-

ance shall be granted except for reasons deemed imperative by the Court." Moreover, time was and is of the very essence of the suit. The well was drilled and was being operated under the permit, which operation is continued under supersedeas bond. The longer the suit pends the greater the amount of oil produced, and the incident deleterious consequences are irreparable. The evidence shows conclusively that the well was not needed to prevent either waste or confiscation. As to waste, the Commission alone had a litigable interest (Shell Oil Co. case, above), and the Commission has not appealed.

As to the testimony of Isadore Roosth three things are apparent from the above statement:

(1) No showing of any effort whatever to obtain his testimony was made, or that it could not have been obtained. The case had been on file nearly three years and had been continued and postponed many times. The motion for continuance had been on file nearly seven months and meantime there had been several continuances and postponements.

(2) There was no showing of what his testimony would be nor (3) that such showing could not be made. R&G's answer was filed December 14, 1940, by the same attorney who tried the case. Isadore was not called into the service until April 27, 1942. Meanwhile there had been four continuances of the case. It is not within the realm of probability that R&G and its attorney did not know or could not learn from Isadore or other sources the basis upon which the permit was granted or might be supported, even before Isadore's call. It is equally improbable that they could not have obtained from Isadore the requisite information in the fourteen months that intervened between his call and the date of trial. In fact, the motion expressly stated that Isadore "had prepared to testify in this cause in behalf of the defendants." Certainly he, R&G, and its attorney must have known what that testimony would be. Shell was entitled also to know in order to determine whether: (1) it would meet the test of being substantial evidence in support of the permit, and (2) it could be conclusively refuted. The allegations that Isadore knew the conditions underlying the leasehold and surrounding area and the log of the well, without stating what these conditions were, was wholly uninformative. Nor is it conceivable that Isadore alone was cognizant of those conditions. As regards the log of the well, showing in detail the various formations: that, verified by Isadore as "Representative of Company" on December 5, 1940, was on file with the Commission and was introduced in evidence by Shell. That Isadore could testify to conditions that would show the well necessary to prevent waste and confiscation, was the barest conclusion; and that "said defendants * * * believe that he can" so testify weakened the effect even of that conclusion; in fact it destroyed the unequivocality of the allegation. The East Texas Oil Field was discovered more than ten years ago and has some 25,000 producing wells. Sand and other conditions throughout the field, affecting the proper administration of the spacing rules, are well known to the oil industry and the Commission. It is the duty of the Commission, and essential to a proper administration of the conservation laws, for it to keep informed on these conditions. Detailed records of each well, bearing on this subject, are kept and open to public inspection. Every conceivable theory which would support a permit on either the waste or confiscation theory has been advanced, urged, contested and litigated. In view of all the attendant circumstances shown by the record, one can not view the allegations of the motion and the prayer for postponement during the military service of Isadore as the expression of a bona fide expectation or even hope of being able to present a valid defense to the suit. If such existed, the interests involved were too important to warrant leaving any stone unturned to obtain testimony to establish it, or (if the testimony was not available) to show what it was, what efforts to obtain it had been made, and why, nevertheless, it was not available. Failure to make such showing would be inexcusable neglect. The conclusion is irresistible that no such showing could be made, and that the conclusive proof in the record that the well was not necessary to prevent either waste or confiscation could not be refuted. The fact that the Commission offered no evidence in support of the permit, and has not appealed, is a strong additional circumstance that no tenable theory supporting the permit existed. The Commission has always been zealous in defending its orders when attacked in the courts.

We have given careful consideration to the Relief Act and the adjudicated cases.

thereunder. The latter are digested in A.L.R. vols. 130, p. 774; 137, p. 451; 140, p. 1509; 141, p. 1515; 142, p. 1514; 143, p. 1525; 144, p. 1511; 145, p. 1479. Conceding, as we must; the salutary objective of the Act to protect every right of the service man from impairment or injury by legal action occasioned by his service, we find nothing in the Act or in the adjudications thereunder to warrant setting aside the order overruling the motion. The recent case of Boone v. Lightner, 319 U.S. 561, 63 S.Ct. 1223, 87 L.Ed. ——, supports this holding.

■ In a supplemental brief Shell urges the counterpoint that the motion was waived because of noncompliance with Rule 325, T.R.C.P., which provides that rulings on motions for continuance (among others specified) "shall be considered as acquiesced in, unless complained of in the motion for new trial." In this respect the first sentence of this rule is in substance the same as prior C.C.A. Rule 70; the holdings under which were that compliance was mandatory. See Stewart v. Poinbœuf, Tex.Civ. App., 270 S.W. 885; Foster v. Gossett, Tex. Civ.App., 17 S.W.2d 469; Hutt v. Hutt, Tex.Civ.App., 76 S.W.2d 567. No decision upon the New Rule appears to have been made. However, it is plain, unambiguous, and not open to construction; and the added second sentence provides that "Nothing in Rule 324 shall render a motion for new trial unnecessary in the instances mentioned in this Rule." There was no motion for new trial in this case, and the ruling on the motion was therefore waived. The counterpoint is sustained.

■ The second point is without merit. It has been repeatedly and uniformly held that an adjoining leaseholder is an "interested person" within the meaning of Art. 6049c, Sec. 8, V.A.C.S., and entitled to maintain the suit therein authorized. See Trem Carr case, Railroad Commission v. Shell Oil Co., 139 Tex. 66, 161 S.W.2d 1022; also Trapp v. Atlantic Refining Co., Tex. Civ.App., 169 S.W.2d 797, error refused, for latest application of the rule. Additionally, it was shown that the well in suit was actually draining the Shell lease. The doctrine of compensatory drainage has no application to the issue of whether one is an interested person under Art. 6049c, Sec. 8.

The trial court's judgment is affirmed.

Affirmed.