COLE et al. v. WAITE.

No. 6157.

Court of Civil Appeals of Texas. Amarillo.

July 2, 1951.

Rehearing Denied Oct. 8, 1951.

James W. Witherspoon and John D. Aikin, Hereford, for appellants.

Hazlewood & Richards, Amarillo, Dennis Zimmermann, Tulia, for appellee.

LUMPKIN, Justice.

On October 1, 1949, the appellee, Lizzie Lieu Waite, who was then 77 years of age, conveyed about 13 acres of land, situated in Swisher County, Texas, to the appellants, Charles Wesley Cole and Steven Ray Cole, the minor sons of Ray Cole. This property, which she had occupied for about 25 years, was the appellee's homestead. Since her husband's death some years ago, she had lived alone most of the time.

On October 4, 1949, Mrs. Waite was placed in a convalescent home near Amarillo by the congregation of the Methodist Church at Happy. On the following day she gave L. A. Walberg power of attorney authorizing him to handle her affairs; and on September 4, 1950, Mrs. Waite was adjudged to be of unsound mind by the county court of Swisher County. Walberg was appointed guardian of her person and estate.

On February 8, 1950, this suit was instituted by the appellee, acting through her next friend, L. A. Walberg, to set aside the deed and to recover title to and possession of her homestead. Although the suit was in the nature of a trespass to try title action, the appellee pleaded that at the time she executed the deed she was of unsound mind—as the appellants knew, that the deed was procured by the exercise of undue influence and that no consideration was paid for it. From a judgment in favor of the appellee, based upon a jury verdict holding that Mrs. Waite did not have mental capacity to execute the deed, the appellants have duly perfected this appeal. The appellants contend that the evidence pertaining to the mental condition of Mrs. Waite was insufficient to establish that she was incompetent to execute the deed and that their motion for an instructed verdict should have been granted by the court.

938

In passing upon the motion the trial court was governed by the test of whether there had been introduced any testimony of such probative force as to raise an issue of fact. If such testimony was introduced, the motion should have been denied. Any inference which reasonably may be drawn from the testimony must be indulged against granting a motion for an instructed verdict. White v. White, 141 Tex. 328, 172 S.W.2d 295.

■■ Our courts are loathe to interfere with one's disposition of his property. Although a person may be old and infirm, his mental and physical strength impaired by the wear of years and the ravages of disease, if he responds to the test which is applied to people in the ordinary experiences of life, the adjustment and disposition of his property and the conduct of his business affairs will be upheld by the court. No higher degree of intelligence is required than that the grantor is cognizant of the extent of his property, knows what he proposes to do with it, and knows the identity of those to whom he desires to convey it.

■ To render an act void because of mental unsoundness, our courts have held that the incapacity must exist at the time the act is done. Brito v. Slack, Tex.Civ. App.; 25 S.W.2d 881. It is ordinarily the rule that less mental capacity is required to make a will than to make a contract. Prather v. McClelland, 76 Tex. 574, 13 S.W. 543; Vance v. Upson, 66 Tex. 476, 478, 1 S.W. 179; Rudersdorf v. Bowers, Tex.Civ. App., 112 S.W.2d 784. But the evidence bearing on mental incompetency is not limited to the time that the act is done. Jackson v. Watson, Tex.Com.App., 10 S.W. 2d 977; Cardinal v. Cardinal, Tex.Civ.App., 131 S.W.2d 1005. In the case of Self v. Becker, Tex.Civ.App., 195 S.W.2d 701, 702, writ ref. n. r. e., it is said: "It is readily apparent that no rule can be announced that would restrict evidence of one's mental condition to any time limitations. We cannot say that an opinion as to one's sanity should be based alone on observations made on the day that the act is done, nor that one who saw the supposedly incompetent person a few hours before or after the questioned act is in better position to express an opinion than one who made observations some time more removed. As bearing upon one's mental capacity at the time a certain thing was done, his course of conduct, acts, utterances, physical condition, and anything else that would throw light upon the matter are admissible."

■ In this case several witnesses for the appellants testified that they saw Mrs. Waite on the day she signed the deed and that they were of the opinion that she was sane. But in considering whether there is evidence to support the verdict, this court may consider only that evidence favorable to the finding. Harpold v. Moss, 101 Tex. 540, 109 S.W. 928; Jackson v. Watson, supra; Texas Electric Ry. Co. v. Wooten, Tex.Civ.App., 173 S.W.2d 463. Seventeen witnesses, who had known Mrs. Waite a number of years, testified to acts which revealed the feeble condition of her mind and body. Among those testifying was Dr. Robinson, who stated that he had known Mrs. Waite for eleven years. He examined the appellee only fourteen days before she executed the deed. He had noticed a great change come over her during the past three or four years. She had developed high blood pressure and some kidney trouble. He said that she was suffering with hardening of the arteries, that there was a noticeable change in her personality and appearance. There were times when she did not recognize people. Three or four months before she went to the convalescent home she did a number of things that were not right. She went around dirty most of the time. He said, "She wasn't eating and I would say she didn't know me most of the time. Sometimes she did." The doctor diagnosed her condition as senile dementia and said she was a person of unsound mind. He said this condition had existed for three or four years.

Another witness was Dr. Fred Richards, who examined Mrs. Waite on September 16, 1949. He said that she was suffering with senile dementia praecox, which he explained by saying, "Well, she was having hardening of the arteries of the brain substance with subsequent brain softening which left her without the power of rea-

son." He said that she was of unsound mind and that he recommended she be institutionalized.

Mrs. Fred Strohmeyer testified that she had known Mrs. Waite for more than 25 years. The appellee, she said, had always been a good housekeeper and had kept her home clean. But in the last few months she had noticed a great change in Mrs. Waite's personal appearance. Her clothing was dirty and torn, the house was unkept, her bed was dirty—the dog slept in the bed. When asked why the dog slept in the bed, she said she thought a lot of that dog because her father had given it to her when she was a little girl. For a year before she was placed in the rest home she had been unable to call the witness by name. Mrs. Strohmeyer was of the opinion that Mrs. Waite was of unsound mind. Most of the other witnesses testified to similar facts. Her home was filthy. She had chicken feathers stuck in flower pots, and seemed unable to remember ordinary happenings. The witnesses had arrived at the opinion that Mrs. Waite was of unsound mind. Under the evidence, the question of Mrs. Waite's mental soundness was raised as an issue to be determined by the jury. The jury's finding that she was of unsound mind on October 1, 1949, is amply supported by the evidence. Caddell v. Caddell, 62 Tex. Civ.App. 461, 131 S.W. 432, 433; Self v. Becker, supra.

Next, the appellants contend the court erred in entering a judgment upon the verdict because the appellee failed to plead or prove that she had any right, title or interest in the property which would, in law, entitle her to maintain a suit in trespass to try title. The appellants insist that the appellee's allegations could establish nothing more than an equitable right, and a mere equitable right will not support an action in trespass to try title. There is no objection in suits of trespass to try title, a purely possessory action, to set out facts which raise issues of an equitable nature. We know of no rule which would prohibit an action of trespass to try title being coupled with a suit to cancel a deed because of the grantor's mental and physical condition. In addition to praying for title and possession of

the land, the appellee asked that the deed be set aside and canceled and that the cloud cast upon her title be removed. The appellee's pleadings and proof are sufficient to support the judgment. Hensley v. Pena, Tex.Civ.App., 200 S.W. 427; Graham v. East Texas Land & Improvement Co., Tex.Civ.App., 50 S.W. 579; 41 Tex.Jur. 625.

The appellants' third point of error pertains to a statement made before the jury by the Rev. Aubry White, one of the appellee's witnesses. While the court was waiting for counsel to return to the courtroom and before the court's charge had been read, but while the jury was in the box, this witness, who had previously testified and who was then a member of an audience of about 75 persons, arose and requested permission to say a few words. Permission was granted, and White said: "Judge (to which the court answered 'Yes'), if it is in order, and I think that it is, I want to thank the court and the good Christian people in this room on the way that this trial has been held and for the Christian way and manner it has been held, and for the patience and consideration of all, and I am satisfied that I not only speak for myself but for a lot of other people in this room." At the conclusion of this statement the court said "Thank you," and the audience and some members of the jury applauded. The appellants contend that this act on the part of the witness, with the apparent approval of the trial court, was so inflammatory and prejudicial as to require a reversal of the case. On motion for a new trial, however, only one juror testified concerning this incident. He said that White's remarks did not affect him in arriving at a verdict in the case. The appellants have failed to show wherein the trial court abused its discretion in not granting a new trial because of White's remarks. 64 C.J. 103. Assuming that the minister's statement was inappropriate, certainly it was not of such a nature as to cause the rendition of an improper judgment. Rule 434, Texas Rules of Civil Procedure.

The appellants complain of the action of the trial court in overruling their motion for continuance based on the ab-

sence of one Sonny Edmondson. This witness, a resident of Potter County, was summoned on April 4, 1950, but it is not shown what date the subpoena summoned him to appear. On August 26, 1950, the appellants learned that he was on duty with the U. S. Army at Camp Hood, Texas. Although the trial was not held until September 13, 1950, no effort was made to take Edmondson's deposition, and appellants' motion does not state that they expected to take his deposition then or at a later term of court. The appellants do not show why the witness' deposition was not taken as provided by Rule 186, Texas Rules of Civil Procedure.

The trial court is allowed a wide discretion in the granting or refusing of a continuance. Leija v. Concha, Tex.Civ.App., 39 S.W.2d 948. Since the appellants failed to show that they had used due diligence to procure Edmondson's testimony, or that his testimony may reasonably be expected at the next term of court, the trial court did not abuse its discretion in overruling their motion. Rule 252, Texas Rules of Civil Procedure; Roosth & Genecov Production Co. v. Shell Oil Co., Tex.Civ.App., 175 S.W.2d 653.

 The appellants contend the court erred in refusing to submit their special requested issue No. 1, which reads: "Gentlemen of the Jury: Do you find from a preponderance of the evidence that Mrs. Lizzie Lieu Waite, after executing the deed on October 1, 1949, later ratified the said deed by stating to divers parties that she had deeded the property to defendants as she had intended to do? You will answer this issue, 'she did so ratify the deed,' or 'she did not so ratify the deed.'" There was evidence that Mrs. Waite experienced lucid intervals and there was testimony that Mrs. Waite said on the date she executed the deed that she had deeded the property to the appellants and that she was glad she had done so.

Although the deed recites a paid consideration of $1, no consideration was actually paid. The property is valued at more than $5000. The appellee insists that the deed was nothing more than a gift and that a gift made by a person of unsound mind is void, 28 C.J. 626, 38 C.J.S., Gifts, § 13, and cannot be ratified, 22 C.J. 738, 32 C.J.S., Evidence, § 572. Aside from this objection, however, the appellants' special issue assumes that Mrs. Waite was mentally capable at the time she ratified the deed. Such an assumption is a charge on the weight of the evidence. The court did not err in refusing to submit the appellants' special requested issue.

 The appellants contend that the court failed to appoint a guardian ad litem for them and that, therefore, the judgment rendered against them is void or at least voidable. Rule 173, Texas Rules of Civil Procedure, provides that "when a minor * * * may be a defendant to a suit and has no guardian within this State, * * * the court shall appoint a guardian ad litem for such person * * *." The judgment reflects that the court designated John D. Aikin, one of the appellants' attorneys, to be their guardian ad litem. The record shows that the appellants though minors were of mature age were accompanied by their parents, and were assisted at the trial by their attorney. Moreover, the appellants did not file an appeal bond. This appeal was perfected without a bond as provided by Article 2276, Vernon's Revised Civil Statutes, which reads in part: "Executors, administrators and guardians appointed by the courts * * * shall not be required to give bond on any appeal * * * taken by them in their fiduciary capacity."

 Appellants' next point of error is directed to a portion of the argument made by appellee's counsel. In the course of the argument counsel was explaining why Mrs. Waite had not been sent to an insane asylum rather than to a rest home. In effect, he stated that if financially able to do otherwise, insane persons as a rule are not sent to the asylum unless they are violent or prone to harm others. He said "* * * they simply do not send them to an insane asylum unless they are violent, and that is the one thing you show to the county judge when you attempt to send anyone to the insane asylum * * *." The appellants contend that this argument

was immaterial and prejudicial because counsel was attempting to detail to the jury the evidence necessary to declare a person insane in the county court. Although the court overruled appellants' objection, appellee's counsel did not pursue this subject further.

We doubt if this statement made by appellee's counsel, when read in context with his entire argument, constitutes prejudicial error. Undoubtedly there would have been no error if the court had instructed the jury not to consider this portion of the argument. However, we fail to see wherein the appellants suffered any injury by reason of these remarks. Since it affirmatively appears that no injury was done the appellants, we overrule their point of error in this connection. Robbins v. Wynne, Tex.Com.App., 44 S.W.2d 946; Ramirez v. Acker, 134 Tex. 647, 138 S.W.2d 1054.

 The appellants contend that the pleadings are insufficient to support the verdict, since the appellee failed to plead that she did not understand the nature and effect of her action when she executed the deed on October 1, 1949. Whether Mrs. Waite understood the nature and effect of the deed was a question for the jury to determine under the court's charge. A proper issue was submitted to the jury in this connection and, as we have seen, the evidence is sufficient to support the jury's finding. The appellee had pleaded that she was of unsound mind, weak and unable to care for herself and that her mind was almost totally ruined by disease and old age so that she was but a mere child and "unable to comprehend her rights or manage her affairs." The appellee's pleadings are sufficient to support the jury's verdict.

 The appellants' next point of error concerns alleged jury misconduct. They contend that the jury discussed the absence of the two persons who were present at the time Mrs. Waite executed the deed, i. e., the attorney who prepared the deed and the notary who took Mrs. Waite's acknowledgment. Under Rule 327, Texas Rules of Civil Procedure, a court may grant a new trial if it is shown that the alleged jury misconduct was such that "it reasonably

appears from the evidence both on the hearing of the motion and the trial of the case and from the record as a whole that injury probably resulted to the complaining party." Although the evidence on the motion for new trial reveals that several members of the jury speculated as to the reason for the absence of these two witnesses, there is nothing to show that the appellants suffered any injury by reason of these speculations and conjectures. The evidence reveals that the attorney and notary did have an opportunity to observe and talk to Mrs. Waite at the time she executed the deed.

We have carefully reviewed the record in this case and in our opinion none of the appellants' points of error reveals reversible error. All points of error are overruled, and the judgment of the trial court is affirmed.