**Affirmed in Part, Reversed in Part, Remanded, and Opinion filed December 8, 2022.**



In The

# Fourteenth Court of Appeals

---

### NO. 14-20-00474-CV

---

## CHERIE ZARSKY, TEMPORARY ADMINISTRATRIX OF THE ESTATE OF CHERYL SUE ZARSKY, Appellant

### V.

## CAROLYN ANN WHITE, INDIVIDUALLY AND AS INDEPENDENT EXECUTRIX OF THE ESTATE OF ORA WHITE, DECEASED, Appellee

---

**On Appeal from Probate Court No. 2
Harris County, Texas
Trial Court Cause No. 456601-401**

---

### O P I N I O N

In this suit between sisters Cheryl Zarsky and Carolyn White,[1] their mother Ora White conveyed a vacation home to Carolyn, whom she named as independent executrix of her estate, and left her homestead to both sisters equally. Shortly after

---

[1] Because this case refers to multiple related individuals, each of whom has the same family name as at least one of the others, we refer to each by that individual's given name.

Ora's death, the house that had been her homestead was severely damaged in a flood, for which it had no insurance coverage. Cheryl sued Carolyn in her individual capacity to cancel the deed and sued Carolyn in her capacity as independent executrix for breach of fiduciary duty and for reimbursement of the ad valorem taxes on the homestead property. After a jury trial, the trial court rendered a take-nothing judgment on all of Cheryl's claims.

On appeal, Cheryl seeks reversal on the grounds of legal and factual insufficiency of the evidence, the denial of her motion for continuance, the exclusion of evidence, charge error, the improper seating of an alternate juror, and juror misconduct. Because the parties did not object to the portion of the charge submitting Carolyn's liability for breach of fiduciary duty, and all of the facts encompassed by that jury question are actually undisputed and in Cheryl's favor, we reverse the judgment as to that claim. We affirm the denial of her deed-cancelation claim and her tax-reimbursement claim, and because those claims are separable, without unfairness to the parties, from the claim for breach of fiduciary duty, we exclude the deed-cancelation and tax-reimbursement claims from our remand of the case for further proceedings.

## I. BACKGROUND

Ora White owned and resided on a four-acre lot in Harris County. She also owned a lakeside residence ("the Lakeside Property") in Robertson County, and a 2001 Buick. On November 30, 2010, Ora signed a warranty gift deed transferring the Lakeside Property to her daughter Carolyn. Ora delivered the deed unconditionally to Carolyn, who recorded it on April 7, 2011.

Ora had divided the four-acre lot in Harris County into four tracts: Tracts A, B, C, and the remaining area of the property on which the house in which Ora resided was located; we will refer to this last area as "the Homestead Property." Ora deeded

2

Tract A to her son Melton, and she deeded Tract B and a private road on the Homestead Property to her daughter Carolyn. She did not transfer Tract C or the Homestead Property during her lifetime.

Ora died on February 16, 2017. In her will, as modified by two codicils, she left her 2001 Buick to Carolyn and named Carolyn as her executor. Ora devised part of tract C to her daughter Cheryl and part of tract C to Cheryl's son Wesley. Ora left the Homestead Property, including her house, to her daughters Carolyn and Cheryl, and directed that any stocks and bonds Ora owned at her death were to be divided equally between Carolyn and Cheryl. Cheryl's daughter Cherie was named as a nominal beneficiary, as were Ora's remaining grandchildren.

Carolyn had the will admitted to probate, and she received letters testamentary on April 19, 2017. Carolyn did not obtain flood insurance on the Homestead Property, and she did not pay the Homestead Property's ad valorem taxes, which instead were paid by Cheryl's daughter Cherie. The home was left vacant; Carolyn testified that she never thought of leasing the house on the Homestead Property, but in any event, "Mother would not have wanted it."

In the last week of August 2017, the house on the Homestead Property was severely damaged by flooding during Hurricane Harvey. With Cherie's help, Cheryl made a claim for flood-damage benefits from the Federal Emergency Management Agency (FEMA), but FEMA denied the claim on the ground that unoccupied property does not qualify for such benefits.

Cheryl sued Carolyn in Carolyn's individual capacity as well as in her capacity as the executor of their mother's estate. Cheryl challenged the conveyance of the Lakeside Property on the grounds that (1) Ora was not mentally competent on the day it was executed, (2) Ora's signature was forged, and (3) the deed was not

3

validly delivered to Carolyn.[2] Cheryl also alleged that Carolyn breached her fiduciary duty to the estate by failing to safeguard the Homestead Property and to insure it against flood damage. Finally, Cheryl sought reimbursement of the ad valorem taxes her daughter had paid.

Regarding the deed-cancelation claim, the trial court excluded Cheryl's proffered evidence regarding Ora's mental capacity. On appeal, Cheryl does not challenge the sufficiency of the evidence supporting the jury's finding that Ora signed the deed but Cheryl does challenge the legal and factual sufficiency of the evidence that Ora unconditionally delivered the deed to Carolyn. Regarding the claim that Carolyn breached her fiduciary duty as independent executrix of Ora's estate, the jury was asked if Carolyn had failed to obtain flood insurance covering the Homestead Property. The jury answered, "No," though it was undisputed that Carolyn did not attempt to do so. Carolyn had testified that she did not know the flood insurance had lapsed, and that the estate lacked the money to insure the Homestead Property. Finally, attorneys for both sides asked that the jury assess their fees, though the trial court stated that attorney's fees were not available in connection with Cheryl's claim for breach of fiduciary duty. The jury assessed each side's fees through trial at around $92,000 but assessed $0 for representation on appeal. The trial court rendered a take-nothing judgment on all of Cheryl's claims and awarded no attorney's fees to either party.

Cheryl moved unsuccessfully for rendition of judgment in her favor or for new trial, then brought this appeal.

---

[2] Although Cheryl also alleged that the conveyance constituted a breach of Carolyn's fiduciary duty to Ora in some manner not described, the only breach-of-fiduciary-duty claim submitted to the jury concerned Carolyn's fiduciary duties as independent executrix of Ora's estate. Because the home was conveyed, if at all, during Ora's lifetime, the conveyance could not have been a breach of Carolyn's fiduciary duty to the estate.

4

As context for some of Cheryl's appellate complaints, the following chronology will also be relevant. On the third day of the five-day trial, Governor Abbott issued a press release urging the public to continue taking preventative measures against the novel coronavirus COVID-19. Cheryl finished presenting the witnesses in her case-in-chief that day. The next morning, Cheryl was seriously injured in a fall at her home and was absent for the remainder of trial; the trial court denied her counsel's oral motion for continuance. On the same day, a juror failed to appear for trial and was replaced with an alternate. Finally, on the fifth and last day of trial, Governor Abbott declared a state of disaster in all Texas counties as a result of COVID-19.

## II. ISSUES PRESENTED

Cheryl has identified three issues, which she states as follows:

1. Whether trial in absentia was fundamental error and an abuse of discretion and deprived Cheryl of effective assistance of counsel as well as access to the courts mandated by the First and Fifth Amendments to the United States Constitution and the open[-]courts provision and corresponding provisions of the Texas Constitution?

2. Whether Cheryl's motion to disregard jury question Nos. 3, 4 [concerning liability and damages for breach of fiduciary duty], and a portion of No. 5 [concerning appellate attorney's fees] pursuant to [Texas Rule of Civil Procedure] 301 and enter final judgment should have been granted?

3. Whether Cheryl's motion for new trial should have been granted and this case should be remanded to the trial court for a new trial based on all of the grounds raised in that motion?

Because these issues contain multiple sub-issues, and some of Cheryl's arguments appear under more than one issue or are distinct from any of them, we will sometimes refer to a "complaint" rather than an issue.

5

When a party presents multiple grounds for reversal, the appellate court should decide rendition issues before remand issues. *Bradleys' Elec., Inc. v. Cigna Lloyds Ins. Co.*, 995 S.W.2d 675, 677 (Tex. 1999) (per curiam) (citing TEX. R. APP. P. 43.3). We accordingly begin our review with those arguments Cheryl presents for rendition of judgment before examining those complaints for which remand would be the only available relief.

## III. DELIVERY OF ESTATE PROPERTY OR ITS VALUE

Cheryl asserts that this Court should render judgment that either orders Carolyn to deliver Cheryl's share of estate property to her or awards Cheryl damages for Carolyn's failure to do so. We cannot do so.

When reversing a judgment, this Court must render the judgment the trial court should have rendered unless a remand is necessary. *See* TEX. R. APP. P. 43.3. A trial court's judgment "shall conform to the pleadings, the nature of the case proved and the verdict, if any, and shall be so framed as to give the party all the relief to which he may be entitled either in law or equity." TEX. R. CIV. P. 301. Cheryl pleaded claims only for (a) cancellation of the deed to the Lakeside Property, (b) breach of fiduciary duty, and (c) reimbursement of property taxes that she caused to be paid on the Homestead Property. Given the nature of her claims, Cheryl did not ask the jury to identify or place a value on her share of estate property, and neither has been conclusively established. Thus, neither we nor the trial court could render the judgment Cheryl now requests.

## IV. THE TAX-REIMBURSEMENT CLAIM

The parties agreed during trial that Cheryl's claim for reimbursement of the Homestead Property's ad valorem taxes paid by Cheryl's daughter Cherie would be decided by the trial court after the jury decided Cheryl's other claims. On appeal,

Cheryl asks us to reverse the part of the judgment awarding Cheryl nothing on any of her claims and to render judgment of $1,615.72 on the tax-reimbursement claim.

The record, however, shows that the parties took up the tax matter at the hearing on Cheryl's post-judgment motions. On the record, and in open court, the parties reached a Rule 11 agreement in which they agreed that reimbursement of up to $2,000 would be paid to Cheryl upon the sale of the Homestead Property, subject to confirmation of the amount due. Because Cheryl's reimbursement claim has now been replaced by a Rule 11 agreement, the trial court did not err in rendering a take-nothing judgment on the reimbursement claim. We accordingly affirm that portion of the judgment.[3]

## V. BREACH OF FIDUCIARY DUTY

In Question 3 of the charge, the jury was asked if Carolyn breached her fiduciary duty in either of two specific ways. Jurors were instructed that if they found that Carolyn had breached a fiduciary duty, then they should answer Question 4 assessing damages for the breach. Jurors failed to find that Carolyn had breached a fiduciary duty, and thus, they did not answer the question asking them to assess damages. On appeal, Cheryl challenges the trial court's denial of her motion to disregard the jury's answer to Question 3 and its failure to answer Question 4.[4]

We analyze the trial court's ruling under the legal-sufficiency standard of review. *See City of Keller v. Wilson*, 168 S.W.3d 802, 823 (Tex. 2005). Because

---

[3] On appeal, Cheryl has not mentioned the Rule 11 agreement. There being no challenge to it, we do not review it. *See* TEX. R. APP. P. 38.1(f).

[4] Cheryl actually asked the trial court to disregard the jury's finding of zero damages, but the jury made no such finding. We therefore treat this as a challenge to the jury's failure to reach the damage question.

7

neither party objected to Question 3 as submitted,[5] we measure the sufficiency of the evidence against the court's charge. *See Osterberg v. Peca*, 12 S.W.3d 31, 55 (Tex. 2000) (sub. op. on denial of reh'g). That question, and its accompanying instruction, are as follows:

> **Question No. 3**
>
> Did Carolyn Ann White breach her fiduciary duty?
>
> The elements of a breach of fiduciary duty are: (1) a fiduciary relationship between the plaintiff and defendant; (2) the defendant must have breached her fiduciary duty to the plaintiff; and (3) the defendant's breach must result in injury to the plaintiff or benefit to the defendant.
>
> Answer "Yes" or "No" below:
>
> **ANSWER:**        **YES**    **NO**
>
> 1. Failing to obtain flood insurance on the [Homestead] Property belonging to the Estate of Ora White?       ___    √
>
> 2. Failing to safeguard property of the Estate of Ora White?       ___    √
>
> **Instruction**: An Independent Executrix has a fiduciary relationship with an estate beneficiary as a matter of law[.]

This charge placed the burden of proof on Cheryl; thus, to obtain reversal on the ground of legal insufficiency, she must demonstrate on appeal that the evidence establishes, as a matter of law, all vital facts in support of the issue. *See Dow Chem. Co. v. Francis*, 46 S.W.3d 237, 241–42 (Tex. 2001) (per curiam). But, under the charge as submitted, this is easily done.

---

[5] The trial court sustained Cheryl's counsel's objection to the inclusion of a case citation inadvertently included with this question, and it granted the attorney's request to include the instruction that an independent executrix owes the estate a fiduciary duty as a matter of law. After the trial court made the requested changes, Cheryl's counsel affirmatively accepted Question 3 and its instruction as submitted.

The instruction accompanying Question 3 established the first element of the breach-of-fiduciary-duty claim. It is undisputed that Cheryl is an estate beneficiary, so Carolyn, in her capacity as independent executrix of Ora's estate, owed Cheryl a fiduciary duty.

The numbered items in Question 3 addressed the second element of the claim, namely, breach of a duty. Subparts 1 and 2 each identify an omission that the charge treats as a breach of fiduciary duty. Certainly, an executor's primary duty is to preserve the estate for distribution,[6] and to that end, an executor has a fiduciary duty to "take care of estate property as a prudent person would take care of that person's own property." TEX. EST. CODE § 351.101. But the charge as submitted imposed upon Carolyn an *unqualified* duty to obtain flood insurance covering the Homestead Property, without regard to whether a prudent person would do so, or even whether the estate had the funds—or could raise the funds through prudent management—to do so. Carolyn argued, both in the trial court and in her response brief on appeal, that it was impossible for her insure the Homestead Property against flood because the estate lacked the money to pay for insurance. *Cf. Lawyers Sur. Corp. v. Snell*, 617 S.W.2d 750, 753 (Tex. App.—Houston [14th Dist.] 1981, no writ) (temporary administrator had no duty to insure estate property against fire because "[o]ne does not have a duty to do the impossible" and expert gave uncontroverted testimony that "fire insurance [covering the property] would have been unobtainable at any price"). But the charge placed no conditions or qualifications whatsoever on the duty to insure the property. "Failing to obtain flood insurance on the [Homestead Property]" was simply followed by blanks labeled "YES" and "NO." Because it is undisputed that Carolyn did not obtain flood insurance on the Homestead Property, we can

---

[6] *See Humane Soc. of Austin & Travis Cty. v. Austin Nat'l Bank*, 531 S.W.2d 574, 580 (Tex. 1975).

sustain the jury's negative answer to this part of the charge only if the jury properly failed to find that the third element—injury—was proved.

But here too, the evidence is undisputed. At trial, Carolyn agreed that "the house was liveable up until [Hurricane] Harvey," but she testified that now, after the flooding from the hurricane, "the house is destroyed"; "[i]t's totaled." Cheryl likewise testified that the home was worth $175,000 when Ora died, and after the hurricane, the property's value was "[n]othing."

In sum, Question 3, subpart 1, submitted only matters that were undisputed, namely, (1) as independent executrix, Carolyn owed Cheryl fiduciary duties; (2) after assuming her duties as executrix, Carolyn did not insure the Homestead Property against flood, and (3) the previously habitable house was then destroyed by flooding. We accordingly agree with Cheryl that the trial court reversibly erred in rendering a take-nothing judgment on her claim for breach of fiduciary duty.

Because of the jury's error, the jury did not answer Question 4, in which jurors were asked to assess damages for breach of fiduciary duty. Cheryl asks us to render judgment that the failure to insure the property caused her damages of $87,500 because she has a 50% share of the property and she testified that the property was worth $175,000 before it flooded and was worth "nothing" after Hurricane Harvey. But, the jury was not required to accept that testimony. Carolyn testified that she had found a buyer and although she did not state the purchase price, the existence of a person willing to pay for the Homestead Property is some evidence that the property still has some monetary value.

We accordingly sustain the part of Cheryl's second issue in which she challenges the jury's answer to Question 3, regarding liability for breach of fiduciary duty, and the jury's failure to answer Question 4, concerning damages for the breach;

10

however, unliquidated damages cannot be tried separately from liability when, as here, liability is contested. *See* TEX. R. APP. P. 44.1(b). We accordingly reverse and remand Cheryl's claim for breach of fiduciary duty as to both liability and damages. The necessity for remand moots the remainder of this issue, in which Cheryl challenges the denial of those portions of her post-judgment motions in which she maintained that she was entitled to an award of attorney's fees in connection with this claim.

## VI. CANCELATION OF THE DEED TO THE LAKESIDE PROPERTY

In seeking to set aside the deed conveying the Lakeside Property to Carolyn, Cheryl asserted as alternative grounds that Ora's signature on the deed was forged; that Ora did not unconditionally deliver the deed to Carolyn; and that Ora lacked the mental capacity to convey the property on the date she signed the deed. As to the first two grounds, the jury found that Ora signed the deed and unconditionally delivered it to Carolyn. As for the remaining ground, the trial court refused Cheryl's evidence and her proposed jury questions on Ora's mental capacity.

Cheryl challenges the judgment on this claim on a variety of grounds. She asserts that the trial court erred in (a) rendering judgment based on legally and factually insufficient evidence that Ora unconditionally delivered the deed, (b) proceeding with the trial after Cheryl's accident precluded her participation, (c) excluding certain evidence, (d) refusing Cheryl's proposed jury questions, (e) seating an alternate juror in place of an absent juror without the consent of Cheryl's counsel, and (f) failing to grant her motion for new trial on the ground that "pandemic panic caused jury misconduct resulting in [an] improper verdict." We address each of these arguments in turn.

11

## A.    Legal and Factual Sufficiency of the Evidence of Delivery

After a jury trial, a party must preserve a complaint that there is legally insufficient evidence to support a finding by raising the complaint in (1) a motion for instructed verdict, (2) a motion for judgment notwithstanding the verdict, (3) an objection to the submission of a jury question, (4) a motion to disregard the jury's answer to a vital fact issue, or (5) a motion for new trial. *T.O. Stanley Boot Co. v. Bank of El Paso*, 847 S.W.2d 218, 220 (Tex. 1992). A party must preserve a challenge to the factual sufficiency of the evidence to support a jury finding by raising the complaint in a motion for new trial. TEX. R. CIV. P. 324 (b)(2).

Cheryl failed to preserve her appellate complaints that there is legally or factually insufficient evidence that Oral unconditionally delivered the deed of the Lakeside Property to Carolyn. To the contrary, in her motion to disregard other jury findings, Cheryl disclaimed any challenge the evidentiary support for the jury's findings on the deed-cancelation claim, stating, "Here, disputed evidence supported the jury's answer to Question Nos. 1 and 2 (forgery) and (want of delivery of a deed)." Because her challenges to this finding have not been preserved for review, we do not address them.

## B.    Cheryl's Absence from Trial

Cheryl argues that the trial court violated her state and federal constitutional rights by proceeding with the jury trial in her absence, that is, by denying her counsel's oral motion for continuance. We review the denial of a motion for continuance for abuse of discretion. *See Gen. Motors Corp. v. Gayle*, 951 S.W.2d 469, 476 (Tex. 1997) (orig. proceeding).

Under the Texas Rules of Civil Procedure, "[n]o application for a continuance shall . . . be granted except for sufficient cause supported by affidavit, or by consent

12

of the parties, or by operation of law." TEX. R. CIV. P. 251. The oral motion for continuance was not so supported, and when a movant fails to comply with the rule's requirements, we presume that the trial court did not abuse its discretion in denying the motion. *Villegas v. Carter*, 711 S.W.2d 624, 626 (Tex. 1986).

Cheryl has not rebutted that presumption, for "a trial court is not required to grant a motion for continuance just because a party is unable to be present at trial." *In re Guardianship of Cantu de Villarreal*, 330 S.W.3d 11, 26–27 (Tex. App.—Corpus Christi–Edinburg 2010, no pet.). Contrary to her assertions, the trial court did not deny Cheryl due process, or the right to petition the government for the redress of grievances, or access to the courts, or the right to be represented by the retained counsel of her choice, or the right to a jury trial. To the contrary, her attorney continued to represent her and the case proceeded without interruption to a jury verdict. Her argument that conducting part of the trial in her absence denied her the right to effective assistance of counsel is similarly without merit, for "the right to effective assistance of counsel has not been extended to civil litigation between private parties relating to a dispute involving property." *Harris v. Nationstar Mortg.*, No. 01-20-00038-CV, 2021 WL 1031538, at *3 (Tex. App.—Houston [1st Dist.] Mar. 18, 2021, no pet.) (mem. op.).

Further, when Cheryl's counsel advised the trial court about her accident, her attorney and the trial court discussed whether Cheryl could attend by phone. Cheryl's attorney said, "I believe I need until I get a report in order to set this up. So I would think proceed tomorrow. And if she's not available, then the Court can enforce its ruling that we go on." But Cheryl was not available the next day, which was the final day of trial. Thus, granting the requested one-day continuance would have made no difference.

Finally, just as the trial court did not cause Cheryl's absence from trial, this Court cannot cure it. Her post-judgment motion for new trial, filed three weeks after Cheryl's injury, was supported by her attorney's declaration that Cheryl was still hospitalized in an intensive-care unit, and in this Court, her attorney filed a suggestion of death. Because Cheryl passed away about a month after her attorney filed the notice of appeal in this case,[7] her absence from trial is irremediable. Even if a continuance had been granted, there is no basis on which to conclude that, during the short span between Cheryl's accident and her death, there was a time when the jury trial could have been resumed with Cheryl in attendance in some manner.

For each of these reasons, independently and collectively, we overrule Cheryl's first issue.

## C.     Exclusion of Evidence

In her motion for new trial, Cheryl argued that the trial court reversibly erred by excluding certain evidence. We review the denial of a motion for new trial for abuse of discretion. *See In re R.R.*, 209 S.W.3d 112, 114 (Tex. 2006) (per curiam). The same abuse-of-discretion standard applies to our review of the trial court's evidentiary rulings. *See Sw. Energy Prod. Co. v. Berry-Helfand*, 491 S.W.3d 699, 727 (Tex. 2016).

A trial court's error in excluding evidence is reversible only if it probably caused the rendition of an improper judgment. *See JLG Trucking, LLC v. Garza*, 466 S.W.3d 157, 165 (Tex. 2015) (citing TEX. R. APP. P. 44.1(a)(1)). To make this determination, we "review the entire record, 'considering the state of the evidence, the strength and weakness of the case, and the verdict.'" *Id.* (quoting *Reliance Steel*

---

[7] Cheryl's daughter Cherie, in her capacity as temporary administratrix of Cheryl's estate, has been substituted as the appellant, but given the similarity in their names, we have continued to refer to Cheryl in the present tense and to treat her as the appellant to avoid unnecessary confusion.

14

*& Aluminum Co. v. Sevcik*, 267 S.W.3d 867, 871 (Tex. 2008)). "[I]f erroneously admitted or excluded evidence was crucial to a key issue, the error was likely harmful." *Sevcik*, 267 S.W.3d at 873. On the other hand, the erroneous admission or exclusion of evidence "is likely harmless if the evidence was cumulative, or if the rest of the evidence was so one-sided that the error likely made no difference." *Id.* (footnotes omitted).

### 1. *Ora's Statements About Her Testamentary Intentions*

The first category of excluded evidence consists of testimony about Ora's statements concerning her testamentary intentions. Cheryl offered her own testimony and that of Gloria Jean Bryant.

### (a) Cheryl's proffered testimony

In a civil case by or against a decedent's heirs and based wholly or partly on the decedent's oral statement, the "Dead Man's Rule" provides that a party may not testify against another party about the decedent's oral statement. TEX. R. EVID. 601(b)(1)(B), (b)(2). This rule does not apply if (1) the party's testimony about the decedent's statement is corroborated, or (2) the opposing party calls the party to testify at the trial about the statement. TEX. R. EVID. 601(b)(3).

According to Cheryl, Carolyn waived the Dead Man's Rule because the trial court admitted a certain statement from Carolyn's video-deposition testimony. Carolyn had testified that Ora signed the deed conveying to Carolyn the area we have referred to as Tract B on March 31, 2011, and Carolyn did not record it until October 28, 2011. When asked about her delay in recording that deed, Carolyn said, "[Ora] got mad at me because I hadn't [recorded it]." [8]

---

[8] Although Cheryl characterizes this quote as referring to the four-month delay between the time Carolyn received the deed to the Lakeside Property and recorded it, Carolyn was actually answering questions about the seven-month delay between the day Ora signed a deed conveying

15

This testimony did not waive the Dead Man's Rule; that rule is inapplicable because Carolyn did not testify "about an oral statement by the decedent." Carolyn testified about how Ora felt, not about what Ora said. In arguing to the contrary, Cheryl relies on *Lewis v. Foster*, 621 S.W.2d 400, 403 (Tex. 1981), in which the court said, "A waiver [of the Dead Man's Statute] also occurs when the executor testifies to *acts* and statements of his deceased."[9] *Lewis* was construing former article 3716 of the Texas Revised Civil Statutes—the "Dead Man's Statute"—which was broader than the current Dead Man's Rule in that it barred testimony not only about a decedent's oral statement, but also about "any transaction with" the decedent. *See Parham v. Wilbon*, 746 S.W.2d 347, 349 n.1 (Tex. App.—Fort Worth 1988, no writ). The current rule applies only to testimony about oral statements, and because Carolyn did not testify as to what Ora said, the rule does not apply.

In a related argument, Cheryl argues that she had no opportunity to rebut such evidence because she was absent from trial at that time. Here, she is simply mistaken. She was present at trial on March 10, 2020, when her counsel played Carolyn's video deposition for the jury during Cheryl's case in chief. Cheryl also was present—and testified—the next day, but was not asked to rebut Carolyn's testimony that Ora was angry about Carolyn's delay in recording the deed to Tract B. It was only on the following day—March 12, 2020—that Cheryl was injured and her absence from trial began.

---

Tract B to Carolyn and the day Carolyn recorded that deed. Although Cheryl had intended to show that there was a longer delay between delivery and recordation of the deed to the Lakeside Property, and to suggest that the longer day implied that delivery in that instance was not unconditional, the uncontroverted evidence was that the delay in recording the deed to the Lakeside Property was little more than half as long as the delay in recording the unchallenged deed to Tract B.

[9] Emphasis added.

16

We conclude that Carolyn did not waive the Dead Man's Rule, and thus, the trial court did not abuse its discretion in excluding Cheryl's proffered testimony about Ora's oral statements.

### (b)     Gloria Jean Bryant's proffered testimony

Cheryl also offered the testimony of Gloria Jean Bryant, who "was witness to discussions with Ora White concerning how Ora White intended to leave her estate." The Lakeside Property, however, was not part of the estate, having been deeded to Carolyn during Ora's lifetime.

Cheryl also expected Bryant's testimony to provide evidence that Ora did not favor one daughter over another and that the will and codicils are consistent with the absence of favoritism between Carolyn and Cheryl. But, the validity of the will and its two codicils were not at issue, for they had not been challenged, and in any event, the trial court ruled that the documents speak for themselves. We agree. The will and its two codicils demonstrate that Ora's testamentary disposition of her estate changed over time, and those intentions are manifested in the unchallenged documents themselves.

Once again, we conclude that the trial court did not abuse its discretion in excluding the proffered testimony.

### 2.     *Testimony About Ora's Mental Capacity in Other Years*

Cheryl next challenges the exclusion of her own testimony and the proffered testimony of Dorothy Woods regarding Ora's mental capacity.

The law presumes that, at the time the grantor executed a deed, the grantor had sufficient mental capacity to understand its nature and effect and to understand the grantor's legal rights. *See Decker v. Decker*, 192 S.W.3d 648, 652 (Tex. App.—Fort Worth 2006, no pet.). To overcome the presumption, the person challenging the

17

deed must prove that the grantor lacked mental capacity when executing the deed. *Id.* Expert medical testimony is not required, because such proof is within the common knowledge of laypersons. *Id.* Evidence of incapacity at other times is admissible if the evidence (a) demonstrates that the condition persists, and (b) is probative of a lack of mental capacity from that condition on the day the document was executed. *See, e.g.*, *Croucher v. Croucher*, 660 S.W.2d 55, 57 (Tex. 1983); *Lee v. Lee*, 424 S.W.2d 609, 611 (Tex. 1968).[10]

Ultimately, however, the trial court ruled that because Cheryl did not contest the will's second codicil, which was signed on April 7, 2011, the trial court would not "allow any testimony in regarding [Ora's] disorientation" on dates before the second codicil was signed. As a result, evidence that Ora was disoriented when she executed the deed on November 30, 2010, would be excluded as well. The trial court added that it "might let [Cheryl] testify that at times when [Ora] was with [Cheryl], [Ora] was confused. But that's about the extent of it."

We agree with Cheryl that a trial court abuses its discretion if, in a suit to cancel a deed, it categorically excludes admissible evidence that the grantor lacked mental capacity on the day the deed was executed. On this record, however, we cannot conclude that the excluded evidence was admissible.

Cheryl's attorney described the testimony he planned to elicit from her as follows: "[In] 2008 [Ora] went to the beauty parlor and instead wound up in a convenience store, was disoriented, had to be picked up. She didn't know where she

---

[10] The trial court mistakenly believed that only experts could testify as to mental capacity, but that laypersons could testify to "soundness of mind." Although "mental capacity" and "soundness of mind" are different, the trial court appeared to treat the two terms as synonymous, and Cheryl does not contend otherwise. In accordance with the trial court's direction, the discussions between counsel and the trial court generally substituted "soundness of mind" for "mental capacity," but it is apparent from those discussions and the cases the parties have cited that both sides were referring to Oral's mental capacity to convey the Lakeside Property.

was. And then they took her car keys away from her and she was incapable of driving." This description of a single instance does not suggest that the disorienting condition persisted until the deed was executed two years later. This is so even when viewed in the light of evidence that Ora was diagnosed with Alzheimer's disease in 2015—seven years after the prior episode of disorientation and five years after the deed was executed. Even Cheryl did not take the position that Ora was so persistently disoriented from the time of the 2008 incident that she probably lacked mental capacity when she executed the deed in late 2010. To the contrary, Cheryl's counsel twice said to the trial court that Alzheimer's disease "ebbs and flows," but "[a]nything that occurred prior to November 30th, 2010 showing disorientation *could have* occurred again."[11] The trial court responded, "Well that's the point, '*could have* occurred again.'"[12] The trial court explained, "I'm not going to have [Cheryl] speculate because [Ora] was confused on one or two occasions that somehow she didn't know what she was doing when she signed various documents at a later time." For the same reason, the trial court also excluded the proffered testimony of Dorothy Woods that Ora lacked mental capacity when Woods became Ora's caregiver in 2015 or 2016—*after* Ora was diagnosed with Alzheimer's disease, and at least five years after Ora executed the deed.

A few cases illustrate the difference between the personal observations excluded in this case and observations that, despite being made on days other than the day on which a challenged document was executed, are nevertheless probative of a lack of mental capacity on that date. We begin with the civil cases cited by Cheryl, all of which concern testamentary capacity.

---

[11] Emphasis added.

[12] Emphasis added.

In *Lee v. Lee*, suit was brought to set aside the probate of a will executed on October 2, 1961. 424 S.W.2d at 610–11. When the testator executed the will, he "was suffering from arteriosclerosis and senile psychosis." *Id.* at 611. The testator's brother "testified that testator only one month prior to the execution of the will did not recognize him; and that he could only remember his children after they had been named to him, and that he would forget their identity shortly after they left his presence." *Id.* This evidence was sufficient to prove the testator's lack of capacity a month later.

In *Schindler v. Schindler*, five witnesses who were present on September 26, 1995, when the testator signed her will, testified that she had the requisite capacity. 119 S.W.3d 923, 931 (Tex. App.—Dallas 2003, pet. denied), *disapproved on other grounds by Ferreira v. Butler*, 575 S.W.3d 331 (Tex. 2019). On the other hand, the trial court heard evidence that the testator suffered strokes in 1993 and 1994, and that in the same month in which she executed her will, the testator could not pay bills, buy groceries, or write checks, and had difficulty recognizing family members. This evidence was factually sufficient to support the trial court's finding of a lack of capacity.

In *Croucher v. Croucher*, a testator's memory began to fail in March 1980 from arteriosclerosis; he executed a will on July 7, 1980; and his arteriosclerosis left him completely incapacitated and no longer lucid by August 12, 1980. 660 S.W.2d at 55. The court stated, "That sequence of events alone is some evidence that [the testator] suffered from the condition on July 7." *See also In re Adkins*, No. 13-15-00066-CV, 2015 WL 13310094, at *24 (Tex. App.—Corpus Christi–Edinburg June 23, 2015, orig. proceeding) (diagnosis of Alzheimer's disease three years before executing the will and ongoing treatment for the disease at the time of the will's execution is "a scintilla of evidence" of mental incapacity).

*Cole v. Waite*, 242 S.W.2d 936 (Tex. App.—Amarillo 1951, writ granted), *aff'd*, 151 Tex. 175 (1952), is a similar example from a suit to cancel a deed conveying the grantor's homestead three days before the grantor's church congregation placed her in a convalescent home. *Id.* at 937. Although some witnesses testified that the grantor had the requisite mental capacity on the day she executed the deed, seventeen witnesses testified to the grantor's lack of capacity, including a physician who had examined her fourteen days before she executed the deed and who had diagnosed her with senile dementia. *Id.* at 938. Another person who had known the grantor for over 25 years testified that she had not been able to call him by name for a year preceding her execution of the deed and her placement in a rest home. *Id.* at 939. This evidence was sufficient to prove that the grantor lacked the mental capacity to execute the challenged deed.

In all of these cases, the document being challenged had been signed after the person who signed it had already been diagnosed with a disease that can result in mental incapacity. And, in all of these cases, witnesses testified that the signer had a persistent lack of mental capacity within a few days or weeks of executing the document.

These cases dealt with evidentiary sufficiency, rather than admissibility, but the principle they illustrate applies here: unlike the evidence excluded in this case, the evidence in the above-cited cases indicated a *probability*, not merely a *possibility*, that the signer lacked mental capacity when executing the challenged document. *See* TEX. R. EVID. 401(a) (to be relevant, evidence must have a "tendency to make a fact more or less probable than it would be without the evidence"). One instance of disorientation in 2008, and even persistent disorientation from 2015 onwards, does not make it any more or less likely that Ora lacked mental capacity on November 30, 2010. *See Coastal Transp. Co. v. Crown Cent. Petroleum Corp.*,

21

136 S.W.3d 227, 233 (Tex. 2004) ("[B]are conclusions . . . cannot constitute probative evidence . . . .").

We overrule Cheryl's evidentiary complaints.

## D.  Refusal of Proposed Jury Questions Concerning Ora's Mental Capacity

In another sub-issue concerning Ora's mental capacity, Cheryl contends that the trial court reversibly erred in refusing two of her proposed jury questions. We review complaints of charge error for abuse of discretion. *See Sw. Energy Prod. Co.*, 491 S.W.3d at 727.

Cheryl's proposed Question 2 was, "Did Ora White lack sufficient mental capacity to handle her own affairs prior to the date of Ora White's death on February 16, 2017? Answer 'yes' or 'No.'" If the jurors answered this question "yes," they were to answer Cheryl's proposed Question 3, which read, "On what date did Ora White lack sufficient mental capacity to handle her own affairs? (Please provide the date or dates, if any, which you find from a preponderance of the evidence on which Ora White lacked sufficient mental capacity to handle her own affairs.)" The jury was told to provide its answer in a blank labeled, "Date lack of sufficient mental capacity began."

The trial court did not abuse its discretion in refusing these proposed questions. To cancel the deed based on a lack of mental capacity, the pertinent question would have been whether Ora lacked mental capacity on November 30, 2010, the date she executed the deed; her lack of mental capacity on other dates were not at issue. But, a trial court is required to submit only those questions that "are raised by the written pleadings and the evidence." TEX. R. CIV. P. 278. And as explained above, no probative evidence was offered or admitted that Ora lacked the requisite mental capacity on November 30, 2010.

22

We accordingly overrule Cheryl's complaint of charge error.

## E. Seating of an Alternate Juror

On March 12, 2020—the same day that Cheryl was injured and her absence from trial began—a juror did not appear for trial. The trial court announced, "Gentlemen and ladies, with respect to the Ora White case, I'll let you know that we did lose a juror yesterday or this morning. . . . So the alternate will be filling in now. I think that was the doctor. He's probably being very cautious." Neither party objected or asked the trial court to take any further or different action.

Cheryl's trial and appellate counsel, Joe Alfred Izen Jr., states in Cheryl's appellate brief,

> The Trial Court provided no opportunity to object to the seating of an alternate juror and conducted no hearing at which any objections could be made. . . . Izen was not informed as to the reason why the juror absented himself. Furthermore, Izen did not consent to proceeding with the alternate. At the time of the filing of the Motion for New Trial, Izen was unaware of the exact ground allegedly supporting the Trial Court's decision to excuse that juror from further attendance of the trial if any such grounds existed.

Cheryl cites no legal authority in support of this complaint. She also does not explain why she could not have raised her unspecified objection when the missing juror was excused and the alternate juror was seated. She does not contend that the alternate juror was disqualified from serving, nor would the record support such a determination, given that the reporter's record omits all proceedings prior to the parties' opening statements. Finally, she does not identify the objection that she would have raised, and without knowing what that objection was, we cannot say whether the objection would have been valid. Because there was no objection and no ruling, we conclude that this complaint was not preserved for review. *See* TEX. R. APP. P. 33.1(a).

23

**F.      Juror Misconduct from "Pandemic Panic"**

In her final argument, Cheryl asserts that "pandemic panic caused jury misconduct resulting in [an] improper verdict." Her only evidence of this is contained in the following chronology:

Trial began on March 9, 2020.

On March 11, 2020, Governor Greg Abbott issued a press release in which he and Texas Department of State Health Services Commissioner John Hellerstedt, MD, "urged Texans to continue taking preventative measures against Coronavirus (COVID-19) to contain the spread of the disease" by frequent handwashing, avoiding close contact with people who are sick, staying home when sick, avoiding touching one's face with unwashed hands, and disinfecting frequently touched objects and surfaces.

On March 12, 2020, a juror who was a medical doctor failed to appear at trial.

On March 13, 2020—the day the trial concluded—Governor Abbott issued a "proclamation certifying that COVID-19 poses an imminent threat of disaster in the state and declaring a state of disaster for all counties in Texas." On the same day, the Supreme Court of Texas issued its First Emergency Order Regarding the COVID-19 State of Disaster, 596 S.W.3d 265 (Tex. 2020), permitting courts to allow or require any party, attorney, witness, or court reporter to participate in any court proceeding remotely, subject only to constitutional limitations.

Cheryl concludes that the governmental announcements and the Texas Supreme Court's order "cast a cloud of worry and panic over the whole jury whose whole goal, it seems from their deliberations, was to get out of the courthouse as quickly as possible." As support for this, Cheryl notes that the jury sent out two questions about the charge during their deliberations. Question 5 of the charge asked,

24

"What sum of money, if any, if paid now in cash would reasonably and fairly compensate the Plaintiff, Cheryl Zarsky, for the reasonable and necessary attorney's fees she has incurred, or will incur?" Question 6 of the charge was identical except that it asked about Carolyn's attorney's fees. At 4:56 pm, jurors sent out a question concerning Question 6. They asked the trial court if they were to decide the total amount of Carolyn's fees, or the balance remaining. The jury was told to re-read the question. Eleven minutes later, jurors inquired about Question 5. This time, they asked if they were to decide if money should be paid to Cheryl Zarsky or to decide what is a reasonable sum to pay her attorney. Again, the trial court told the jury to carefully review the question.

These facts contain no hint of juror misconduct or improper outside influence. If anything, the jury's questions suggest only the jurors' diligence in performing their assigned task and their concern to do so correctly.

We overrule this this complaint. In so doing, we have now overruled all of the complaints encompassed in Cheryl's third issue.

## VII. CONCLUSION

We overrule all of the complaints encompassed within Cheryl's first and third issues and preserved for our review. Having overruled all of Cheryl's preserved complaints concerning her claim for cancelation of the deed conveying the Lakeside Property to Carolyn, we affirm the part of the judgment denying Cheryl relief as to that claim. Because Cheryl's claim for reimbursement of ad valorem taxes is now governed by a Rule 11 agreement that has not been addressed on appeal, we likewise affirm the portion of the judgment denying Cheryl relief as to that claim.

On the other hand, we sustain the parts of Cheryl's second issue in which she contends that (a) the trial court erred in failing to disregard the jury's finding in

25

answer to Question 3 that Carolyn did not breach her fiduciary duty by failing to obtain flood insurance on the Homestead Property, and (b) the jury erred in failing to assess damages for the breach. Because contested liability and unliquidated damages cannot be tried separately, we reverse the judgment as to Cheryl's claim for breach of fiduciary duty. Our disposition of this issue renders moot her complaints concerning the jury's failure to assess appellate attorney's fees and the trial court's failure to award any attorney's fees.

Finally, we conclude that the deed-cancelation claim, the tax-reimbursement claim, and the breach-of-fiduciary-duty claim are separable without unfairness to the parties. *See* TEX. R. APP. P. 44.1(b). We accordingly exclude the deed-cancelation and tax-reimbursement claims from the scope of remand, and with these exceptions, we remand the case for further proceedings.


/s/     Tracy Christopher
Chief Justice

Panel consists of Chief Justice Christopher and Justices Wise and Hassan.

26